

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00372-CR

Scott Edward **WILSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR12096
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:     Karen Angelini, Justice
Concurring Opinion by: Rebeca C. Martinez, Justice

Sitting:         Karen Angelini, Justice
                 Marialyn Barnard, Justice
                 Rebeca C. Martinez, Justice

Delivered and Filed:  November 20, 2013

AFFIRMED

Scott Edward Wilson was charged with ten counts of possessing child pornography. After being found guilty by a jury of all ten counts, he was sentenced by the trial court to four years imprisonment and a $1500 fine, to run concurrently. On appeal he argues that (1) the evidence is insufficient to support his convictions; (2) the trial court erred in not giving a limiting instruction to the jury; (3) the trial court erred in instructing the jury that the images in the indictment were children and thus commented on the weight of the evidence and reduced the State's burden of proof; and (4) the trial court erred in instructing the jury that the images in the indictment were

children and thus denied Wilson the right to a trial by jury under the Texas and U.S. Constitutions. We affirm.

### BACKGROUND

In 2008, Wilson and his wife, Sonja, were having marital problems. Wilson, however, did not want a divorce because of religious reasons. At the time, Wilson and Sonja's two children were eleven and twelve years old. A computer used by all four members of the family (each with his or her own profile) was in the converted-garage playroom. A book called "Cleaning Windows XP" was found in the computer area. Sonja testified this book belonged to Wilson.

At trial, Sonja, a German citizen, testified that she met Wilson in Germany in 1992. In 1996, they had a daughter. In 1997, they married and had a son. They lived in Germany until 2000 when they moved to the United States. Sonja testified she and Wilson had a normal relationship until Wilson purchased a computer. According to Sonja, Wilson started spending all his time in their converted garage on the computer. He slept in the room and ate his meals there. He hung towels and clothes so that the computer's monitor could not be seen. Sonja testified, "When you come into the room, he turned the screen in the corner where he was sitting so you couldn't see it when you come in that room what he was looking at." According to Sonja, Wilson was addicted to pornography. Because she was suspicious of him watching pornography on the computer, she would attempt to see what Wilson was doing on the computer. However, because everyone in the household (Wilson, Sonja, and their two children) had their own profiles and because she did not know Wilson's password, she would wait until Wilson had left to go to the bathroom or until Wilson left the computer without logging off, and then she would check to see what he was doing by looking into the internet history. On the evening of Monday October 27, 2008, while Wilson was in the bathroom, Sonja checked the computer to see what he had been doing. She found in the internet history images of what she believed were children not older than her own children

performing sexual acts. When she confronted Wilson, he told her that it must have been caused by a virus, stating the children must have been clicking on websites. Sonja then called the police. When the officers asked if she knew Wilson's password, Sonja testified she told the police that she did not. While the police were there, she looked in a folder where Wilson kept his passwords. According to Sonja, "he had so many passwords in that folder" and would change his passwords all the time. By clicking on a password hint, she was able to figure out which password was correct. She then gave consent for the police to seize and search the computer. Sonja testified that she did not download the images at issue onto the computer, nor has she ever looked at pornography on the computer.

Jose Andrade, a police officer with the San Antonio Police Department, testified that he responded to a call regarding child pornography on October 27, 2008. After separating Sonja and Wilson, he and another officer followed Sonja into the converted garage where the computer was located. Sonja showed him the pornographic images on the computer. According to Andrade, some of the images appeared to be children under the age of eighteen.

Alicia Pardue, a crime scene technician testified that she was called to Wilson's home on October 27, 2008, and took photographs of the computer's screen, which showed pornographic images. She took photographs of the computer's screen to document the history on the computer and the images themselves. She scrolled down the computer screen and then took photographs of the images on the computer. These photographs she took of the monitor's screen, which depicted about eighty-eight images, were admitted in evidence.

Michael Stark, a detective investigator with the technical investigations unit, computer crimes detail, testified that he performed an analysis on the computer found in Wilson's home. He found hundreds of pictures of pornography, most of which were images of adult pornography. His report was admitted in evidence. Stark testified that based on his experience over the last twelve

years of working on child pornography cases, he was able to pick through the images and choose images that were of very young males and females. Stark testified that the images related to the indictments were found in the temporary internet history under Wilson's profile. He also testified regarding when the images at issue were created on the computer according to the computer's set time of <u>Pacific Standard Time</u>:

- The image related to Count I was created on October 26, 2008, at 7:10:44 a.m.

- The image related to Count II was created on October 26, 2008, at 1:21:36 p.m.

- The image related to Count III was created on October 26, 2008, at 1:21:31 p.m.

- The image related to Count IV was created on October 26, 2008, at 3:11:05 p.m.

- The image related to Count V was created on October 26, 2008, at 7:51:06 a.m.

- The image related to Count VI was created on October 26, 2008, at 1:10:55 p.m.

- The image related to Count VII was created on October 26, 2008, at 1:19:30 p.m.

- The image related to Count VIII was created on October 26, 2008, at 3:17:04 p.m.

- The image related to Count IX was created on October 26, 2008, at 1:19:46 p.m.

- The image related to Count X was created on October 26, 2008, at 1:10:58 p.m.

Stark found no images created before October 22, 2008. He explained that "[e]verything you do on the internet is stored in a temporary internet [cache] under a specific profile." However, the temporary internet cache is limited to a certain number of bytes on a hard drive that can be set by the user. So, when that limit is reached, the computer overwrites it with new data. A user can also clear the temporary internet cache. Stark also testified that a user of the computer can change the computer's clock, which would change all the recording times for the creation dates of files. According to Stark,

Whatever the date and the time is at the time – whatever date and time that's set on the computer at the time an image is downloaded is the date and time stamp that the computer is going to give that picture that it was put on that specific computer.

On January 21, 2009, Wilson submitted to a voluntary, noncustodial interview with Detective Angel Castello. The interview was videotaped and admitted in evidence. During the interview, Wilson admitted to looking at adult pornography on the computer. He said that while he was looking at adult pornography, every once in a while a picture of an underage child would pop up and he would quickly "back out." He noted that this would happen specifically with a certain Russian website. He admitted that he could tell the people depicted in these types of images were underage. The youngest he could recall seeing on an image was a girl who looked to be about twelve years old. He first stated that he just clicked on the image to "verify" that it was indeed an image of an underage girl – "just to verify that this really could be what I think it might be." When Wilson was told how many images were found on the computer and asked why he would need to keep verifying images, Wilson stated, "different girl, just because one girl looked [underage], maybe the next one is older." Wilson then stated that he clicked on the images of underage girls because he was "curious" – "Could this be what I think it might be?" "Like, wow, I can't believe that really happens." According to Wilson, he was sexually abused by a teenage girl as a child and clicked on the images "just to see that this stuff is out there." Wilson explained that he was curious about the fact that "pictures like that were really out there." He wondered if the children in the pictures felt like he did when he was abused as a child. He spoke of seeing an image of an underage girl on the Russian website: "The Russian girls – I think that is the worst case scenario of what I have seen." He spoke of certain images he saw on the Russian website, "With some of the Russian girls that were nude . . . this [image] is getting really close to, you know, and I am not feeling too cool about this, and she is naked, and she probably is, you know, twelve years old and, you know what, poor kid, you know, I know how it feels –get out of here, you know what I'm saying." At

the end of the interview, Detective Castello asked Wilson, "Do you think this ever occurred . . . the images being on your computer?" "Yeah, I saw them." Wilson repeated that he did not seek out child pornography, but he admitted that he looked at images of underage children about ten times, recognizing that he probably got into areas he should not have and that he "was curious about it," but then he "got out."

Wilson's daughter also testified about Sunday October 26, 2008, the day the images were created on the computer according to the computer's set time. On October 26, 2008, Wilson's daughter was twelve years old. She testified that on that day, *she thought* she, her father, and her brother went to church. *She thought* that they went to Whataburger to eat breakfast before church, which started at 9:30 a.m. Wilson's daughter testified that church was over around "11:30, 12." *She believed* that she had a project to do for school and that after church, they went to Hobby Lobby and some other store to get supplies. She testified that *she believed* that they then ate lunch at Subway. She testified that when they came home, it was still daylight and they worked on her project. She, her brother, and her father then went back to church for a second service at "5, 5:30." She also testified that about six months previous to the incident at issue, her mother and father had gotten into an argument about adult pornography found on her user profile on the computer. She told her mother later that she was the one to blame. She had been typing in Google a game to play when a website came up. When she clicked on it, pornographic pictures popped up.

On cross examination, Wilson's daughter testified that it was normal practice for her, her father, and her brother to go to church on Sundays, and although she remembered "that weekend," "a week before her project was due," she "didn't know the exact date." She admitted that she did not remember when exactly her project was due. She did not "know for sure" if that weekend was the weekend of October 26, 2008.

Wilson testified in his own defense. He testified that Detective Castello never showed him the images the police were accusing him of having on his computer. He admitted he told Detective Castello that he might have accidently gone on a website that had child pornography. He testified that he is "not computer savvy" and he did not "know how some of them got on there." "All I know is I didn't do it." He testified that the accidental images he stumbled upon occurred "maybe early 2008, 2007," but they were not the images found between October 22, 2008 and October 27, 2008. He admitted to having viewed adult pornography on the computer – "not every day," "not every week," "not every month," "but there were times when I did do it." Wilson testified that on Sunday October 26, 2008, he went to church with his two kids. According to Wilson, church begins at 9:30 a.m. and they went to breakfast at Whataburger before church. So, he estimated that he, his daughter, and his son left around 8:30 a.m. or 8:45 a.m. Wilson testified a Bible class was at 9:30 a.m. and then the service began at 10:30 a.m. According to Wilson, church would typically end between 11:45 and noon. Wilson testified that after church on October 26, 2008, his daughter's friend wanted to come over to visit, so he drove to the daughter's friend's house so that the friend could change clothes. They then went home, and Wilson began watching football. He turned on the computer to check football scores. The kids then said they were hungry, so Wilson took them to Subway. They then went shopping for supplies for his daughter's school project. He believed that they got home around 3:45 p.m. While he was gone, he had left his computer open on the website where the football scores had been posted. They then went back to church around 4:30 p.m. and arrived back at home around 6:30 p.m. He and his son then worked on the science project (which was for his daughter) until 10 p.m. or 11:00 p.m. The next day, Monday October 27, 2008, he went to the bathroom and when he came out, his wife began accusing him of having child pornography on his computer. She called the police and would not let him near the computer.

SUFFICIENCY

In his first and second issues, Wilson argues that the evidence is insufficient to support his convictions for possessing child pornography. In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

> Under Texas law, a person commits the offense of possession of child pornography if
>
> (1) the person knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct; and
>
> (2) the person knows that the material depicts the child as described by Subdivision (1).

TEX. PENAL CODE ANN. § 43.26(a) (West Supp. 2012). Possession is defined by the Penal Code as "actual care, custody, control, or management." *Id.* § 1.07(a)(39).

Wilson first argues there is insufficient evidence that he possessed the images at issue. He emphasizes that he was not in exclusive possession of his computer and contends that there is no evidence affirmatively linking him to the images found on his family's computer. We disagree.

When contraband is not found on a person or is not in a location that is under the exclusive control of a person, mere presence at the location where the contraband is found is insufficient by

itself to establish actual care, custody, or control of the contraband. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g. "links"), may be sufficient to establish possession beyond a reasonable doubt. *Id.* Evidence that links the defendant to the contraband suffices for proof that he possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Santiesteban-Pileta v. State*, No. 10-12-00154-CR, 2013 WL 3122431, at *1 (Tex. App.— Waco June 20, 2013, pet. ref'd). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162. This "affirmative links" rule protects the innocent bystander from conviction merely because of his or her fortuitous proximity to someone else's contraband. *Id.*

In *Wise v. State*, 364 S.W.3d 900, 904 (Tex. Crim. App. 2012), the Texas Court of Criminal Appeals noted the "peculiarities of determining knowing or intentional possession of computer pornography." In reviewing cases from other jurisdictions, the court of criminal appeals explained that other courts have generally taken "two approaches to framing sufficiency analysis in cases involving child-pornography images discovered in a computer's cache or free space."[1] *Id.*

The court of criminal appeals explained that courts in jurisdictions using the first approach, termed a "present-possession approach," analyze the sufficiency of the evidence to determine whether a defendant had the knowledge and ability to access the files in their present format. *Id.*

---

[1]Here, the images at issue were found under Wilson's user profile in the cache.

> A cache (pronounced 'cash') is a storage mechanism designed to speed up the loading of Internet displays. When a computer user views a webpage, the web browser stores a copy of the page on the computer's hard drive in a folder or directory. That folder is known as the cache, and the individual files within the cache are known as temporary Internet files. When the user later returns to a previously visited webpage, the browser retrieves the cached file to display the webpage instead of retrieving the file from the Internet.

*Wise*, 364 S.W.3d 904 n.3 (quoting Ty E. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files*, 19 BERKELEY TECH. L. J. 1227, 1229-30 (2004)).

In contrast, courts in those jurisdictions using the second approach do not consider whether a defendant had the knowledge and ability to access the files in their present format. *Id.* Instead, those courts would hold evidence of child pornography found in a computer cache to be sufficient to support a conviction because "the presence of the images in the cache is evidence that, at some earlier point, a defendant knowingly or intentionally possessed the images by viewing them online." *Id.* at 905. Under this second approach, "a defendant need not be aware that the image continued to exist on the computer, and the present accessibility of the image is not pertinent." *Id.* "Instead, the pertinent inquiry is whether a defendant had knowingly or intentionally possessed a pornographic image at a prior point in time." *Id.*

After considering both approaches, the court of criminal appeals concluded that "[a]lthough these two general approaches are instructive in explaining the difficulties of establishing criminal intent in the possession of computer pornography," "each case must be analyzed on its own facts." *Id.* Thus, the court held that in computer-pornography cases, "like all criminal cases, a court must assess whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence considered in the light most favorable to the verdict." *Id.*

The court of criminal appeals then considered whether there was sufficient evidence to support the appellant's conviction for possession of child pornography found in the "free space" of appellant's computer. *Id.* at 902. The court of appeals had reversed the appellant's conviction, holding that the State had failed to prove that the appellant knowingly or intentionally possessed the images because the images could possibly have gotten on the hard drive innocently without appellant having ever seen or accessed them. *Id.* At the court of criminal appeals, the State criticized the court of appeals for erroneously applying the "reasonable hypothesis analytical construct," which was rejected by the court of criminal appeals in *Geesa v. State*, 820 S.W.2d 154,

156 (Tex. Crim. App. 1991).[2] The court of criminal appeals agreed with the State that the court of appeals had erroneously focused on two alternative hypotheses that the images could have been placed on the computer without appellant's knowledge either through (1) a virus; or (2) a previous owner of the computer. *Wise*, 364 S.W.3d at 905.

With regard to a virus, the court of criminal appeals noted that while the State's computer expert acknowledged there were several viruses on the computer and that some viruses are capable of placing images on a computer without a user's knowledge, the expert also testified that it was unlikely the presence of viruses would explain the presence of the images in the free space of a computer. *Id.* at 905-06. Thus, the court of criminal appeals criticized the court of appeals for "credit[ing] appellant's suggestion that viruses on his computer could have placed the images there," explaining that "[b]ecause the placement of a pornographic image on the free space of a computer would be inconsistent with the purpose for placing a virus on a computer, the jury could have reasonably disregarded that explanation for the presence of the images." *Id.* at 906.

With regard to prior owners of the computer, the court of criminal appeals explained "the court of appeals erred by crediting appellant's suggestion that the images could have been placed on the computer by a prior owner of the computer and finding that to be an alternative hypothesis inconsistent with guilt." *Id.* Although the testimony that appellant bought the computer at a flea market was uncontroverted, the jury could reasonably reject the testimony. *Id.* The court explained that "[u]ncontroverted evidence does not necessarily equate to credible evidence, particularly when the State could not readily controvert the evidence because of the lack of detail." *Id.*

---

[2] In *Geesa*, 820 S.W.2d at 156, the court of criminal appeals held that for the evidence to be sufficient to support a conviction, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. Rather, the court of criminal appeals explained that a court should consider only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *See Wise*, 364 S.W.3d at 903 (discussing *Geesa*).

Therefore, the court of criminal appeals held that "[b]y focusing on the alternative hypotheses premised on the possibility of viruses or a prior owner placing the images on the free space of the computer, the court of appeals used a sufficiency standard that [was] abrogated by [this] Court" in *Geesa*. *Wise*, 364 S.W.3d at 906. The court of criminal appeals also explained that the court of appeals "erred by implicitly examining the evidence in the light favorable to appellant, focusing on the fact that he could not access the images in the free space of the computer and the absence of computer evidence to establish exactly when the images were placed on, accessed, or deleted from the computer." *Id.* The court of criminal appeals explained that the court of appeals should have viewed the evidence in the light favorable to the verdict. *Id.* Viewing the evidence in the appropriate light, the court of criminal appeals held a jury "could have reasonably rejected appellant's claims that the images were due to a virus or former computer owner and instead determined that appellant had a history of and present sexual attraction to children and that he intended to possess the pornographic images of the children that were in the free space of his computer." *Id.* at 907-08.

Here, Wilson emphasizes that his former wife had access to the family's computer, that she had figured out his password, and that she had a motive for placing the images on the computer as Wilson was refusing to give her a divorce. Wilson also points to the time-stamp of the images on the computer and argues that he was not present at home when the images were viewed but was instead at church and shopping with his children. However, in making this argument, Wilson is asking this court to focus on an alternative hypothesis and view the evidence in the light most favorable to him, not to the verdict. As explained, pursuant to *Geesa*, 820 S.W.2d at 156, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. Thus, we do not focus our inquiry on the alternative hypothesis of Wilson's former wife possibly being responsible for the images found in the cache under Wilson's profile. *See Wise*, 364

S.W.3d at 906. Instead, we view all the evidence in the light most favorable to the jury's verdict and determine whether a jury could have reasonably rejected Wilson's claim that the images were due to his former wife and could have instead determined that Wilson intended to possess the pornographic images of the children found in the computer's cache under his user profile. *See id.* at 907-08.

In looking at all the evidence in the light most favorable to the verdict, a reasonably jury could have rejected Wilson's argument that his former wife was responsible for the images and could have instead determined that Wilson intentionally and knowingly possessed the images. There was evidence at trial that (1) the images were found under Wilson's profile; (2) Wilson's profile was password protected; (3) Wilson had moved into the room where the computer was located and was sleeping in the room; (4) Wilson was addicted to pornography and started acting differently after the family purchased a computer; (5) Wilson placed towels and clothing around the computer so that one could not see the computer's monitor; (6) Wilson would try to prevent anyone from viewing the computer's monitor; and (7) Wilson owned a book about how to "clean" his computer. Most importantly, there was Wilson's own videotaped interview with police where he admitted that *he* had viewed, at least ten times, images he knew were child pornography on his computer. During the interview, he first claimed to the officer that he had inadvertently viewed images and would quickly "back out" when he saw something questionable. Then, he stated that he just clicked on the images to "verify" that they were of underage children. When he was told how many images were found on the computer, Wilson stated that he had viewed images he knew were of underage children because he was "curious." Then, he stated he looked at the images out of sympathy for the children. He spoke in particular of a Russian website where he saw underage girls and admitted to having continued to look at images on the website even after seeing underage images because the next image may not be one of an underage girl.

With regard to whether his former wife was one who placed the images on the computer, the jury could have believed his former wife's testimony and rejected Wilson's testimony. The jury could have reasonably believed his former wife's testimony that she found the images in Wilson's temporary internet history while Wilson was in the bathroom and that she figured out his password only once the police arrived. As to the computer's time-stamp of the images, there was testimony that a user can change the clock on the computer. Thus, the jury could have reasonably concluded that the time of creation of the images on the computer did not necessarily correspond to real time. Finally, the jury could have reasonably rejected Wilson's testimony that he was not present when the images were viewed on the computer. The jury could have further reasonably rejected his daughter's testimony. His daughter testified that she really was not sure if the events she remembered occurred on the weekend in question. *See Wise*, 364 S.W.3d at 906 (explaining that "[u]ncontroverted evidence does not necessarily equate to credible evidence"). In looking at all this evidence in the light most favorable to the verdict, a jury could have reasonably inferred that Wilson knew about the child pornography on his computer and was in possession of it.

We note that Wilson cites *United States v. Moreland*, 665 F.3d 137 (5th Cir. 2011), for support. However, *Moreland* is factually distinguishable from this case. In *Moreland*, 665 F.3d at 140, the Fifth Circuit considered whether the evidence was sufficient to rationally support a jury finding beyond a reasonable doubt that the appellant knowingly possessed images found on two computers in the computers' disk slack space.[3] The two computers were owned by appellant and his wife, and were used by appellant, his wife, and appellant's terminally ill father. *Id.* Appellant's

---

[3] The Fifth Circuit explained that "[d]eleted files are not wholly removed from the computer." *Moreland*, 665 F.3d at 142. "A deleted file is marked as unallocated file space, which allows that file to be overwritten by new files." *Id.* "A computer's deleted files make up what is known, in this case, as the disk slack space." *Id.* "A knowledgeable forensic investigator may use forensic software to search for, recall, and view the contents of the unallocated file space." *Id.* "This process is known as 'restoring' a deleted, but not yet overwritten, file." *Id.*

terminally ill father slept in the living room and frequently used the computers late at night while appellant and his wife were sleeping, and during the day while appellant was at work. *Id.* Appellant, his father, and his wife all had access to, and free use and control of appellant's username, password, and Yahoo! account on both computers. *Id.* Appellant's father was never interviewed or investigated by police before his death in January 2008. *Id.* In May 2008, appellant was indicted with knowing possession of child pornography and was later convicted by a jury. *Id.*

In viewing all the evidence, the Fifth Circuit held that the evidence was insufficient for a rational juror to have concluded that appellant knowingly possessed child pornography. *Id.* at 154. The officer who testified about the two computers was not offered, qualified, or accepted as an expert in child pornography or in forensic computer technology. *Id.* at 144. "Because of the lack of information in the computers, [the officer] said he could not testify as to where the images had come from, when they were received or deleted, or who was operating the computer at those times; also, he testified that he could not express an opinion as to whether any particular image was child pornography." *Id.* The officer could not recover information pertaining to where the images had come from or when they entered the computer. *Id.* at 145. The officer did find usage patterns showing that a user of the computers in 2007 had visited a website that might have contained child pornography shortly after or shortly before visiting the Yahoo! website where the user checked email or played dominoes. *Id.* at 145-46. Appellant's wife testified that appellant "was always logged on" from both computers to his Yahoo! account on the internet. *Id.* at 146. Thus, she did not need a password to access his account, and she used his Yahoo! email account to check and send email. *Id.* She testified that appellant "had the same password for everything" and she knew the password. *Id.* Both appellant and his wife testified that they had never looked at child pornography and that appellant's father would use the computers late at night while they were sleeping and would log in under appellant's name. *Id.* Appellant's brother testified that when

appellant's father learned the computers were being searched for child pornography, appellant's father asked him to bring the computer owned by appellant's father to the residence he was staying. *Id.* at 147. Appellant's father then asked appellant's brother to destroy the computer. *Id.* Appellant's brother refused and testified that as far as he knew, his father destroyed the computer. *Id.* The wife of appellant's brother corroborated this story. *Id.* Both appellant's brother and the wife of appellant's brother testified that after appellant's father died, they cleaned out his house and found a large amount of pornographic material. *Id.*

In holding the evidence was insufficient, the Fifth Circuit emphasized that the only evidence in support of appellant possessing child pornography was the fact that the images were found on his profile. *See id.* at 151-53. However, the evidence showed that everyone in the home used appellant's profile. *See id.* at 151-52. Further, there was strong evidence that appellant's father was the perpetrator. *See id.* Unlike in *Moreland*, in this case there was evidence that (1) Wilson was living and sleeping in the room where the computer was located; (2) Wilson's profile was password protected; (3) Wilson was addicted to pornography and started acting differently after the family purchased a computer; (4) Wilson placed towels and clothing around the computer so that one could not see the computer's monitor; (5) Wilson would try to prevent anyone from viewing the computer's monitor; (6) Wilson owned a book about how to "clean" his computer; and (7) in his videotaped statement to police, Wilson admitted he had viewed child pornography on the computer.

Wilson next argues there is insufficient evidence that the images were actually of children under eighteen years of age or that he knew the images depicted children under eighteen years of age. First, the images themselves constitute evidence from which a rational juror could have concluded beyond a reasonable doubt that the images depicted children less than eighteen years of age. The Texas Penal Code does not require expert testimony to determine a child's age in a

possession of child pornography case. Section 43.25(g) provides that when it becomes necessary for purposes of section 43.26 to determine whether a child who participated in sexual conduct was younger than eighteen years of age, the court or jury may make such a determination by any of the following methods:

(1) personal inspection of the child;
(2) *inspection of the photograph or motion picture that shows the child engaging in the sexual performance*;
(3) *oral testimony by a witness to the sexual performance as to the age of the child based on the child's appearance at the time*;
(4) expert medical testimony based on the appearance of the child engaging in the sexual performance; or
(5) any other method authorized by law or by the rules of evidence at common law.

TEX. PENAL CODE ANN. § 43.25(g) (West 2011) (emphasis added).

The images at issue have been filed under seal in this Court. After viewing these images, we conclude that the jury could have reasonably found beyond a reasonable doubt that the images depicted underage children. Moreover, in his videotaped interview with police, Wilson admitted that he knew certain images he had viewed on his computer were of children less than eighteen years of age. Lastly, Detective Stark testified that based on his twelve years of experience working on child pornography cases, he determined that the images were of "very young males and females." Thus, the jury could have rationally concluded that the images were of children less than eighteen years of age and that Wilson knew they were less than eighteen years of age.

### OTHER IMAGES ADMITTED IN EVIDENCE

Wilson also argues that the trial court erred in admitting images in addition to those described in the indictment into evidence without giving a limiting instruction. Wilson emphasizes that when evidence of extraneous offenses are admitted for a limited purpose, a defendant is entitled, upon timely request, to an instruction by the trial court to the jury limiting the jury's consideration of the extraneous offenses to those purposes for which they are admitted. The State

responds that Wilson has not preserved this issue for review because when he made the request,

the trial court was not admitting the evidence for a limited purpose.

When the State first offered the images, defense counsel objected based on relevancy and

Rule 403.[4] After a discussion, the following occurred:

> Court: In light of what – in light of my objection to – or excuse me, my overruling your objection to relevancy, in light of what the State has proffered is going to be testimony offered.
>
> Defense: And as we said –
>
> Court: Evidence offered, I should say.
>
> Defense: -- the 403 balancing test, you also denied that, and are going to – and then you're admitting it for all purposes. If you're admitting it for a limited purpose, then we would ask for an instruction to the jury.
>
> Court: Okay. *And I'm not doing that at this point.*

(emphasis added). Thus, according to the trial court, at that point in the proceedings, it was

admitting the images for all purposes, not just for a limited purpose. Wilson has made no complaint

on appeal about the trial court admitting the images for all purposes or that the images were

inadmissible pursuant to Texas Rule of Evidence 403. Further, we note that in his statement of the

issue, Wilson refers to "testimony regarding appellant's addiction to adult pornography" being

admitted without a limiting instruction. However, Wilson never explains in his brief what

testimony he is referring to or where in the record he made a request for a limiting instruction with

regard to such testimony. *See* TEX. R. APP. P. 33.1; 38.1(i). Finally, we note that the additional

photographs at issue were same transaction contextual evidence. *See Delgado v. State*, 235 S.W.3d

244, 253 (Tex. Crim. App. 2007). And, the court of criminal appeals has held that a limiting

---

[4] Defense counsel never objected pursuant to Texas Rule of Evidence 404(b).

instruction is not required when evidence is admitted as same-transaction contextual evidence. *See*

*Devoe v. State*, 354 S.W.3d 457, 471 (Tex. Crim. App. 2011).

## JURY CHARGE

In his fourth and fifth issues, Wilson argues that the trial court, in its charge, commented on the weight of the evidence by instructing the jury that the images in the indictment were of children. The State responds that the trial court did not comment on the weight of the evidence as the application paragraph clearly first instructed the jury "if you find from the evidence beyond a reasonable doubt that" and then just tracked the language of the indictment. For example, Count I of the indictment alleged the following:

> on or about 27th Day of October 2008 SCOTT EDWARD WILSON, hereinafter referred to as defendant, did intentionally and knowingly possess visual material that visually depicted, and which the defendant knew visually depicted a child, who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, to wit: actual sexual intercourse, namely, Documents and Settings\scott\Local Settings\Temporary Internet Files\content.IE5\UX@JQF6Z\qI1986[1].jpg, which depicts a nude female child with her legs spread sitting on a male's groin.

The application paragraph of the jury charge provided the following with respect to Count I:

> Now, *if you find from the evidence beyond a reasonable doubt that* on or about the 27th Day of October 2008, in Bexar County, Texas, the defendant, Scott Edward Wilson, did intentionally or knowingly possess visual material that visually depicted, and which the defendant knew visually depicted, a child, who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, to wit: actual sexual intercourse, namely, Documents and Settings\scott\LocalSettings\Temporary internet Files\content.IE5\UX2JQF6Z\qI986[1].jpg which depicts a nude female child with her legs spread sitting on a male groin, *then you will find the defendant guilty of Possession of Child Pornography as charged in Count I of the indictment*. If you do not so believe, or if you have reasonable doubt thereof, you will find the defendant not guilty in Count I of the indictment.

(emphasis added).

At the charge conference, defense counsel stated the following:

Your Honor, I'm concerned about some of the language on pages four through thirteen. Each one of the charge that lists out the charge – the offense, right after the line right after the long series of numbers and letters it says: which depicts a nude female child. Well, the fact that [] either [it] is or isn't a child is certainly one of the major issues in this case. And even though I know that is the language that's taken off the indictment, it appears that the way it's framed here and the flow of the information appears to be a judgment by the Court stating that this is definitely a child. Either I would ask that the word child be deleted from that in each of the paragraphs or that we have some sentence after that stating that the use of the word child in the previous paragraph does not indicate any judgment by the Court or any intent to tell you that it is definitely a photo of a child. That that is for the jury to decide.

The trial court overruled the defense's objection and denied the defense's request for an instruction. On appeal, Wilson argues that the language "which depicts a nude female child" was an improper comment by the trial court that the image was of a child.

Article 36.14 of the Texas Code of Criminal Procedure requires that a trial court provide a jury charge "distinctly setting forth the law applicable to the case" and must not express "any opinion as to the weight of the evidence." TEX. CODE CRIM. PROC. ANN. art. 36.14. The charge must contain an accurate statement of the law and must set out all the essential elements of the offense. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). A charge that "assumes the truth of a controverted issue" is an improper comment on the weight of the evidence. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986).

Here, the application paragraph instructed the jury to first find every fact listed beyond a reasonable doubt: "Now, *if you find from the evidence beyond a reasonable doubt that ....*" *See Coplin v. State*, 585 S.W.2d 734, 736 (Tex. Crim. App. [Panel Op.] 1979) (holding that a jury charge that tracked the language of the indictment after the phrase "if you find and believe" was not a comment on the weight of the evidence). Additionally, using the word "child" was not a comment on the weight of the evidence, as section 43.26(a) of the Penal Code provides that a person commits an offense if he knowingly or intentionally possesses visual material that "visually

depicts a *child* younger than 18 years of age." *See* TEX. PENAL CODE ANN. § 43.26(a) (West Supp. 2012) (emphasis added). In *Casey v. State*, 215 S.W.3d 870 (Tex. Crim. App. 2007), the court of criminal appeals held that an application paragraph, which used the word "victim" but tracked the language of the relevant statute, was not a comment by the trial court on the evidence. In *Casey*, the application paragraph provided,

> Now if you find from the evidence beyond a reasonable doubt that . . . [appellant], acting alone or as a party, did . . . knowingly or intentionally cause penetration of the female sexual organ of [K.T.], without the consent of [K.T.], by . . . the sexual organ of [appellant], and [appellant], acting alone or as a party, did administer or provide a drug, namely: [GHB] to [K.T.], the victim of the offense, with the intent of facilitating the commission of the offense, then you will find the defendant guilty of aggravated sexual assault, as charged in the indictment.

*Id.* at 886 (alterations in original). The court of criminal appeals noted that section 22.021(a)(1)(A)(i)(2) provides that a person commits aggravated sexual assault if he "administers or provides flunitrazepam, otherwise known as rohypnol, [GHB], or ketamine to *the victim of the offense* with the intent of facilitating the commission of the offense." *Id.* (emphasis in original). Thus, the charge in using the term "victim" was tracking the language of the statute. *Id.* at 886-87. The court was "not persuaded that the charge as written assumed the truth of a controverted issue or that the appearance of the word 'victim' in the charge without the modifier 'alleged' is a comment by the trial court which assumes the truth of a controverted issue – the issue of consent." *Id.* at 887 (quotations omitted). Thus, the court of criminal appeals concluded that "[b]ecause the jury charge tracked the language of the statute, the trial court did not abuse its discretion by including the word 'victim' in the charge." *Id.*

Finally, the phrase complained of by Wilson merely described the visual material at issue and tracked the language of the indictment. Generally, an application paragraph that tracks the pertinent language of the charging instrument is permissible. *See Andrews v. State*, 652 S.W.2d 370, 374 (Tex. Crim. App. 1983). In looking at the paragraph as a whole, it is clear the complained

of phrase was merely describing the image and was not a comment by the trial court that the image depicted a child.

## CONCLUSION

For the reasons explained, we affirm the judgments of the trial court.[5]

Karen Angelini, Justice

Publish

---

[5] After Wilson's counsel filed a brief on appellant's behalf, Wilson filed a *pro se* brief raising additional points of error. We do not address these points because Wilson has no right to hybrid representation. *See Marshall v. State*, 210 S.W.3d 618, 620 n.1 (Tex. Crim. App. 2006); *Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004).