**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00450-CR**
_____

**CHARLES HENRY HAWKINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 14-19778**

**MEMORANDUM OPINION**

A Jefferson County grand jury indicted Charles Henry Hawkins[1] for the

offense of possession of child pornography, a third-degree felony. *See* Tex. Penal

Code Ann. § 43.26(a), (d) (West 2016). Following a plea of not guilty, a jury

convicted Hawkins and sentenced him to ten years of confinement in the Institutional

---

[1] Appellant is also known as Charles Hawkins-Griffin and Charles Henry Hawkins-Griffin.

1

Division of the Texas Department of Criminal Justice, plus a $10,000.00 fine. *See id.* § 12.34 (West 2019). In one issue on appeal, Hawkins complains the evidence was insufficient to support the jury's verdict. We affirm the trial court's judgment.

**Background**

On June 5, 2013, a flooring company was replacing the carpet in vacant Unit 11 of the Hyde Park West Apartments in Beaumont, Texas. One of the company's helpers testified that as the job concluded, he vacuumed the carpet while another employee cleaned the work area. As he was vacuuming, the vacuum hit the closet door frame and an SD card fell on the floor from inside of the closet. The helper testified that after the card fell, he reached up on top of the interior door frame and located two additional SD cards. The helper testified that he took the three SD cards to the carpet company's warehouse and put them in the company's digital camera to see if they contained any images, but none appeared. Because he thought they contained no images, the helper placed them on a desk in the warehouse.

Two days later, the helper told the vice president of the flooring company about the SD cards, and they decided to use an SD card reader attached to a company computer to check them. Both employees testified that when they inserted the first card, an adult pornographic video appeared on the screen, which they promptly closed. They both told the jury that when they checked the second card, the first

2

image that "popped up" was of a child posed in some sort of costume, and the child appeared to be under the age of eighteen. The employees' testimony established that they ejected the card and immediately contacted the police. When a Beaumont police officer responded the same day, the employees gave the officer the cards, explained what happened, and described what they observed. The vice president denied adding any files to the SD cards. The employees testified that a Beaumont police detective contacted them later to obtain witness statements.

A Beaumont police detective, who is assigned to online child exploitation crimes and conducts visual forensic examinations, investigated the case. The detective described his specialized training in these types of cases for the jury and the types of child exploitation crimes he investigates. He testified that he retrieved the three SD cards from the property room the day the department assigned him the case. Since witnesses reported that the cards might contain child pornography, the detective thought it prudent to first conduct a "forensic preview" and determine if the case merited further investigation. He explained that by conducting a forensic preview, he could see the information on the cards, including file names, dates, and times.

The detective testified that he conducted the forensic preview the same day he retrieved the cards and observed child pornography on the SD2 card.[2] Having discovered child pornography, the detective wanted to determine where the cards had been and who had access to them to identify a suspect. The detective explained that during the preview of the SD2 card, the information he looked for included (1) the file name, which can be indicative of the content, (2) the location on the SD card and whether it is buried in several folders, (3) metadata including the created dates and times, (4) last modified dates, and (5) last access dates. He testified that the SD2 card contained images he considered child pornography, images he considered child erotica or child modeling, images of adult pornography, and sixteen "selfie-type photographs" he attributed to a single individual.[3]

After conducting the initial preview, the detective testified that they went to the leasing company for the apartment complex and identified occupants who lived in Unit 11 over a three-year period in order to develop a suspect. The detective testified, and evidence in the form of business records confirmed, that Hawkins

---

[2] At trial, the three SD cards were referred to as SD1, SD2, and SD3. The State only admitted the images from the SD2 card, which it separated onto three different CDs for the jury to see as State's Exhibits 4, 5, and 6.

[3] The officer explained that in some of the images, the face of the individual is not visible, only body parts; however, they all appeared to be the same person. Exhibit 4 contained the child pornography, and Exhibit 5 contained the child erotica, while Exhibit 6 contained images of the suspect.

resided in Unit 11 from April 20, 2012 to July 31, 2012. After Hawkins moved, one other tenant leased the unit between September 9, 2012 and May 16, 2013. When the detective ran the driver's license photos of those individuals and compared them to the self-portraits on the SD2 card, Hawkins looked familiar.

The detective explained that after the preview, he conducted a "true forensic examination" of the SD2 card, which is when he extracted the images of child pornography, child erotica, and the "selfie-type photographs". He said that he assumed the dates and times of the images on the SD2 card were correct, and by assuming such, he testified that the images of Hawkins appeared on the SD cards before the child pornography appeared.

The detective said the relevant time period during which images were put on the card and accessed was two years. He testified that the images contained creation dates beginning in January 2010 and were last accessed on July 26, 2012. After July 26, 2012, the cards were not accessed again until June 5, 2013, when the flooring company's employees attempted to see what they contained. The detective testified that Hawkins lived in the apartment on the date the cards were last accessed.

The detective defined possession as "a person who has care, custody, control, or management of an item." He explained that the material was physically possessed during the dates and times the files were created and put onto the cards between 2010

5

and 2012. He also looked at who last had custody or control of the cards. The detective explained that he was focused on an approximate two-year time span and who had access to the cards during that time. He testified that the person responsible for putting the child pornography on the card had around the clock access to it for two years.

The detective testified that based on his experience, the dates and timestamps are generally accurate. He indicated that the child pornography started appearing on the SD card on January 27, 2010. The detective confirmed that most of the last access dates for the files were July 26, 2012, although there were some with a date of June 26, 2012. He also confirmed evidence showed Hawkins vacated the apartment on July 31, 2012. Even though another individual occupied the unit after Hawkins, the detective never found anything on the cards that would tie them to the later tenant.

The detective testified that based on his training, experience, and the totality of the evidence, he believed Hawkins put the child pornography and images of himself on the SD cards. He told the jury that the SD cards being found hidden in Hawkins's former residence was significant. The detective testified that the SD2 card contained approximately 650 images of adult pornography, 97 images of child pornography, and 222 images of child erotica. He testified that the overall circumstances provided multiple ties to Hawkins.

Senior Forensic Examiner Matthew Danner testified as the sole witness for the defense during the guilt-innocence phase of the trial. Danner described his experience and qualifications for the jury. Danner testified that at least eleven months separated the SD card from the defendant, which is "a long time for a piece of evidence to be out there by itself." Danner said it raised questions about the forensics and the reliability of the dates and timestamps. Danner testified that based on the SD card alone, he could not determine that the person in the images was responsible for the child pornography. Danner told the jury that the only way to know if the dates are accurate is the experience of the investigators. While he conceded that in most cases the dates and timestamps are accurate, he questioned whether they were in this case because they did not have Hawkins's computer to compare them to.

Danner testified that a person staying with Hawkins could have used a computer to download child pornography then put it on the SD card without Hawkins's knowledge. Danner testified that forensically, he did not find anything directly pointing to Hawkins, except the images of Hawkins on the card.

Danner indicated nothing forensically led him to believe the timestamps were inaccurate. Danner testified there was "a lot of pornography" on the SD cards and agreed they should consider other things in addition to forensics, including

7

Hawkins's images on the cards and the fact that they were discovered in Hawkins's former residence. He agreed that someone potentially added and deleted the files over a two-year time span. Danner testified that forensically speaking, there was no evidence showing that Hawkins possessed the SD card containing the child pornography but also conceded there was no forensic evidence suggesting it could not have been Hawkins.

Other evidence the State admitted at trial included copies of the images from the SD2 card, and spreadsheets created by the detective containing information from the forensic examination of the SD cards, including the extraction of metadata, including file name, creation date and time. The State also admitted business records from the apartment complex, which established the dates of Hawkins's occupancy.

**Standard of Review**

When reviewing the sufficiency of the evidence, we view all the evidence in a light favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). If the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the prosecution. *See id.* at 903; *see also*

8

*Jackson*, 443 U.S. at 326. Determinations about the weight and credibility of the evidence rest exclusively with the factfinder. *Jackson*, 443 U.S. at 319; *Wise*, 364 S.W.3d at 903 (citations omitted). In applying the standard of review, we determine whether "the jury's inference was reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 902–03 (citing *Brooks*, 323 S.W.3d at 895; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

**Analysis**

A defendant commits possession of child pornography if he "knowingly or intentionally possesses . . . visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct" and the defendant "knows that the material depicts the child" in this way. *See* Tex. Penal Code Ann. 43.26(a); *Wise*, 364 S.W.3d at 903. Texas Penal Code section 6.03 defines culpable mental states. *See* Tex. Penal Code Ann. § 6.03 (West 2011). A person acts knowingly or with knowledge "when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). Proof of a culpable mental state commonly

9

depends on circumstantial evidence. *Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)). A jury can infer knowledge from the surrounding circumstances. *Id.* (citing *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978)). The Texas Penal Code defines "possession" as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2018).

The Texas Court of Criminal appeals has held that in child pornography cases, "each case must be analyzed on its own facts." *Wise*, 364 S.W.3d at 905. Specifically, the Court has directed that "[f]or computer-pornography cases, like all criminal cases, a court must assess whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence considered in the light most favorable to the verdict." *See id.* (citing *Hooper*, 214 S.W.3d at 13).

> Sufficient evidence to support a jury's determination that the defendant had knowledge of the images of child pornography on his computer may include evidence that: (1) the images of child pornography were found in different computer files, showing the images were copied or moved; (2) the images of child pornography were found on an external hard drive or CD, which indicates the images were deliberately saved on the external devices; (3) the images stored on the computer and the external hard drive were stored in similarly named folders; (4) the names of the folders containing the images of child pornography necessarily were assigned by the person saving the file; or (5) the recovery of numerous images of child pornography from the defendant's computer.

*Ballard v. State*, 537 S.W.3d 517, 523 (Tex. App.—Houston [1st Dist.] 2017, pet. stricken) (citing *Krause*, 243 S.W.3d at 110–12).

In the present case, the undisputed evidence at trial established that witnesses found the SD cards on top of a door casing inside a closet in an apartment Hawkins previously occupied. The evidence further established that one of the SD cards contained pornographic images of children under the age of eighteen, as well as images of Hawkins. While the experts disputed the accuracy of the timestamps contained on the SD cards, both acknowledged such timestamps were generally accurate. The State's expert testified that he assumed the creation dates and access dates were accurate, whereas the defense expert testified that he could not say they were accurate but could not say they were inaccurate either. The State's expert testified that when viewing the evidence cumulatively, it pointed to Hawkins being the individual who placed the child pornography on the cards. This evidence included: (1) the location of the SD cards; (2) Hawkins's images, including illicit photos, on the same SD card that contained the child pornography; and (3) forensic data indicating the SD cards were accessed while Hawkins resided in the apartment and were not accessed again after he vacated the apartment until the flooring company employees who found them attempted to determine what they contained. A jury could have reasonably inferred that the placement of the images on an

11

external device, here the SD card, was intentional. *See Ballard*, 537 S.W.3d at 523 (citing *Krause*, 243 S.W.3d at 110–12). Additionally, a jury could have inferred knowledge from the hidden location of the cards. A jury could likewise reasonably infer that Hawkins controlled the SD cards since his images on the cards pre-dated the placement of the child pornography. Finally, while the experts disagreed over the reliability of the date and timestamps, the State's expert provided evidence tending to show that the cards were accessed while Hawkins occupied the apartment and had not been accessed again since he left. The jury could have credited the State's expert testimony and discounted the defense's expert, which likewise logically supports the inference Hawkins had care, custody, or control of the images contained on the SD cards.

At trial, the defense presented two alternative hypotheses for who put the images on the SD cards. The defense hypothesized that a man who briefly stayed with Hawkins before he moved may have been responsible for the images on the SD cards. However, there was no evidence provided of this man's identity or dates he stayed in the apartment. Next, the defense hypothesized that a male tenant who occupied the unit after Hawkins could have located the SD cards with Hawkins's images then downloaded the pornography onto the cards. The State's expert testified that they interviewed the other tenant, and investigators found nothing linking him

to the SD cards. Further, the other tenant did not live in the unit on the date the forensic evidence established the images were last accessed. "[T]he State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt." *Wilson v. State*, 419 S.W.3d 582, 590 (Tex. App.—San Antonio 2013, no pet.) (citing *Geesa v. State*, 820 S.W.2d 154, 156 (Tex. Crim. App. 1991)). A reasonable jury could have rejected these alternative scenarios proposed by the defense and instead determined that Hawkins knowingly and intentionally possessed the images. *See id.*

We overrule his sole issue on appeal.

## Conclusion

Viewing the evidence cumulatively in the light most favorable to the verdict, we conclude a rational jury could have reasonably inferred that Hawkins knowingly had care, custody, control, or management of the pornographic images of unknown children found on an SD card hidden in his former apartment which also contained images of him. *See* Tex. Penal Code § 43.26(a); *Wise*, 364 S.W.3d at 908; *Ballard*, 537 S.W.3d at 524. Having concluded any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 9, 2019
Opinion Delivered July 10, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.