Walter Harvey **BALLARD,**
**Jr., Appellant**

v.

**The STATE of Texas, Appellee**
**NO. 01-15-00275-CR**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued July 25, 2017

Rehearing Denied December 15, 2017

Petition for Discretionary Review
Stricken March 21, 2018

Maverick John Ray, 1419 Franklin St., Houston, TX 77002, for Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Heather A. Hudson, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Justices Jennings, Higley, and Massengale.

## OPINION

Michael Massengale, Justice

A jury convicted appellant Walter Harvey Ballard, Jr. of possession of child pornography. *See* TEX. PENAL CODE § 43.26. The jury found true the allegations of an enhancement paragraph, that Ballard previously had been convicted of felony sexual assault, and it assessed punishment at 13 years in prison and a fine of $10,000. On appeal, Ballard challenges the sufficiency of the evidence to support his conviction. He also contends that the trial court erred by: denying his motion to suppress evidence; denying his motion for a mistrial made after one of the State's witnesses violated a limine order; and overruling his objection to the State's allegedly improper jury argument during the punishment phase of trial.

Because the evidence was sufficient to support Ballard's conviction, and the trial court was not shown to commit any other reversible error, we affirm the judgment of conviction.

### Background

Appellant Walter Harvey Ballard, Jr., a paralegal, lived in Houston with his girlfriend, Lisa Davis. Officer Russell Ackley, an officer with the Houston FBI Child Exploitation Task Force, learned through an investigation that someone using an Internet Protocol (IP) address assigned to Ballard's residence was sharing child pornography on a peer-to-peer file-sharing network.

Officer Ackley executed an affidavit in support of a request for a warrant to search Ballard's home for child pornography. In the affidavit, he outlined his experience and training in investigating child-pornography cases and the sexual exploitation of children. Officer Ackley explained that he searched the national Internet Crimes Against Children database to find computer users in the Houston area who were making files containing child pornography available for download. He identified a particular IP address that was making videos available for download with titles descriptive of child pornography, and he downloaded five files from that IP address using the peer-to-peer file-sharing network. The downloaded files contained images and movies of child pornography. He issued an administrative subpoena to an internet service provider where the IP address was registered, and he learned that at the time he downloaded the videos, the IP address was assigned to Walter Ballard in Houston.

Based on the information in Officer Ackley's affidavit, a federal judge issued a warrant to search Ballard's residence. The warrant's description of the places to be searched or the persons or items to be seized was placed in two attached exhibits. The attachments described, in detail, Ballard's house and the items to be seized there. After the issuance of the warrant, Officer Ackley and several FBI agents went to Ballard's residence to search for child pornography. Prior to the search, the officers only provided Ballard with a copy of the warrant without the attachments. They did not have copies of the attachments when they began the search.

During the search of Ballard's home, law-enforcement officers seized several computers, loose external hard drives, and compact discs. Once the search was completed, the officers left a copy of the warrant, including both of its attachments, and an inventory of the items seized from the home. Following the search, a forensic examination of the seized digital devices was performed. As a result, Officer Ackley discovered that a computer found in the house contained "a couple of hundred videos" that, based on his experience and training, he identified as child pornography. In addition, a loose external hard drive and at least eight CDs contained child pornography.

After the forensic examination of the items seized from the home, a grand jury returned an indictment charging Ballard with possession of child pornography. The indictment included an enhancement paragraph alleging that Ballard previously had been convicted of sexual assault.

Prior to trial, Ballard filed several motions in limine. The trial court granted one of the motions regarding the admissibility of extraneous-offense evidence, and it ordered the State to approach the bench before presenting such evidence. Ballard also filed several motions, under a variety of legal theories, to suppress all evidence obtained during the search of his house. Specifically, he argued that the search was unreasonable because, prior to the search, the officers did not provide him the warrant's attachments which described his house and the items to be seized. He also argued that the search was unreasonable because the officers did not have probable cause to search his house once they discovered that the IP address identified by Officer Ackley was attached to an unsecured wireless network.

The trial court held a hearing on Ballard's motions to suppress. At the hearing, Officer Ackley testified about his investigation. He also testified that another officer, Officer John Barnes, had downloaded child pornography from the same IP address. In addition, Officer Ackley explained that he

did not have copies of the attachment to the warrant with him prior to the search of Ballard's home, but following the search he left copies of the warrant with attachments, along with an inventory of seized items. The court denied Ballard's motions to suppress and filed findings of fact and conclusions of law.

At trial, the State called several witnesses, including Officer Ackley, to testify about the search of Ballard's house and the results of that search. Initially, Officer Ackley described the investigation he conducted using peer-to-peer software, and he identified Ballard as one of the people located at the house when the search began. He testified that 29 digital devices including computers, external hard drives, and CDs were seized from the home and examined forensically. After the forensic examination, Officer Ackley reviewed the files identified by the forensic examiner as possibly containing child pornography. One of the computers seized contained "probably a couple hundred videos" depicting child pornography. Additionally, Officer Ackley stated that files were saved on the various digital devices between 2007 and 2013. The State introduced and played a video found on the desktop computer seized from Ballard's home office. Officer Ackley described the contents of the video, and based on his experience and training opined that the video was child pornography. Officer Ackley also opined that Ballard was the person who possessed the child pornography.

In addition to Officer Ackley, an FBI agent testified about his role during the search, which included performing a "forensic preview" of the desktop computer in Ballard's office. The "forensic preview" allowed the officers to preview the contents of a computer without writing any data to the hard drive. According to the agent, the computer was turned on when he entered the office, and a legal document was displayed on the desktop. Before performing the "forensic preview," the agent accessed the start menu, and a video player was identified as a "recently used" application. Without selecting the video player, the agent was able to see that several of the recently played videos had titles indicative of child pornography. The agent then described the process he undertook to conduct the "forensic preview," which identified several files on the computer's hard drive with titles consistent with child pornography.

After the agent testified about the forensic preview, the State questioned him about his role in the rest of the search. In response to this line of questioning, the agent answered that "crystal meth" and a gun also had been found in the home. Defense counsel requested that the jury be instructed to disregard these comments and moved for a mistrial because the agent's answer violated the limine order regarding extraneous offenses. The court instructed the jury to disregard the agent's answer and denied the motion for a mistrial.

The State also called Lisa Davis, Ballard's girlfriend, to testify about the contents of the house and the people who lived there. Davis identified the room where the desktop computer, external hard drives, and CDs containing child pornography were found as the office where Ballard did a lot of his work as a paralegal. Davis also testified that Ballard was the primary user of the computer and that he used it "all the time." Further, Davis identified Clifton Hall as Ballard's nephew who had lived in the house for a period of time prior to the search. According to Davis, Hall moved into the house for a few months and moved out about a week before the search took place. Davis had never seen Hall using

Ballard's computer except to search for jobs.

The jury found Ballard guilty of possession of child pornography.

During the punishment phase, the State discussed in its closing argument parole law and the charge instruction provided to the jury regarding parole law. Ballard objected to the State's discussion of parole law as improper argument. The trial court overruled this objection.

The jury found the allegation of the enhancement paragraph to be true and assessed punishment at 13 years in prison and a fine of $10,000. Ballard appealed.

### Analysis

On appeal, Ballard challenges the sufficiency of the evidence to support his conviction. He also contends that the trial court erred by: denying his motion for a mistrial based on the FBI agent's comments about an extraneous offense; denying his motions to suppress; and overruling his objection to the State's argument regarding parole law during the punishment phase.

### I. Sufficiency of the evidence

Ballard challenges the sufficiency of the evidence to establish beyond a reasonable doubt that he intentionally or knowingly possessed child pornography. He emphasizes that he was not in exclusive possession of the devices upon which the child pornography was found, and he contends that there is no evidence affirmatively linking him to the pornography. Ballard also suggests that in light of defensive evidence produced at trial, which suggested that someone else could have downloaded the child pornography to the computer, the jury could not have found beyond a reasonable doubt that he knowingly or intentionally possessed the materials.

In reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals will determine whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We measure the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Brooks*, 323 S.W.3d at 922. On appeal we may not reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The evidence-sufficiency standard of review is the same for both direct and circumstantial evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Hooper*, 214 S.W.3d at 13.

A person commits possession of child pornography if he "knowingly or intentionally possesses visual material ... that visually depicts a child younger than 18

years of age at the time the image of the child was made who is engaging in sexual conduct" and he "knows that the material depicts the child" in this manner. Tex. Penal Code § 43.26(a). A person acts "intentionally" or with intent "with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). A person acts knowingly or with knowledge of the nature of his conduct or circumstances "when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b). The Penal Code defines "possession" of contraband as "actual care, custody, control, or management." *Id.* § 1.07(a)(39).

When contraband is not found on a person or is not in a location that is under the exclusive control of a person, mere presence at the location where the contraband is found is insufficient by itself to establish actual care, custody, or control of the contraband. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "However, presence or proximity, when combined with other evidence, either direct or circumstantial ..., may be sufficient to establish possession beyond a reasonable doubt." *Id.* Accordingly, a fact finder may infer that the defendant intentionally or knowingly possessed contraband not in his exclusive possession if there are sufficient independent facts and circumstances justifying such an inference. *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016).

In *Wise v. State*, 364 S.W.3d 900 (Tex. Crim. App. 2012), the Court of Criminal Appeals noted the "peculiarities of determining knowing or intentional possession of computer pornography." *Wise*, 364 S.W.3d at 904. The Court concluded that "each case must be analyzed on its own facts." *Id.* at 905. Thus, the Court held that

in computer-pornography cases, "like all criminal cases, a court must assess whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence considered in the light most favorable to the verdict." *Id.* Sufficient evidence to support a jury's determination that the defendant had knowledge of the images of child pornography on his computer may include evidence that: (1) the images of child pornography were found in different computer files, showing the images were copied or moved; (2) the images of child pornography were found on an external hard drive or CD, which indicates the images were deliberately saved on the external devices; (3) the images stored on the computer and the external hard drive were stored in similarly named folders; (4) the names of the folders containing the images of child pornography necessarily were assigned by the person saving the file; or (5) the recovery of numerous images of child pornography from the defendant's computer. *See Krause v. State*, 243 S.W.3d 95, 110–12 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

After a forensic examination of the digital devices seized from Ballard's residence, several hundred videos depicting children engaging in sexual conduct were found stored on his home office computer. Many of these videos were stored on the computer with titles suggestive of child pornography. Ballard used this computer to perform tasks associated with his job as a paralegal. Davis testified that Ballard was the primary user of the office computer and spent most of his time doing legal work on it. The videos found on the computer were stored on the same drive as files containing legal documentation stored under Ballard's profile name. The fact that child pornography with explicit titles had been saved alongside legal documentation

stored under Ballard's profile suggests that he knowingly possessed child pornography. *See id.* at 111–12. Further, the fact that hundreds of files of child pornography were recovered from Ballard's computer is also circumstantial evidence that he knowingly possessed child pornography. *See id.*; *Zaratti v. State*, No. 01-04-01019-CR, 2006 WL 2506899, at *6 (Tex. App.—Houston [1st Dist.] Aug. 31, 2006, pet. ref'd); *Savage v. State*, Nos. 05-06-00174-CR, 05-06-00175-CR, 2008 WL 726229, at *7 (Tex. App.—Dallas Mar. 19, 2008, pet. ref'd).

Agents also discovered child pornography on an external hard drive as well as on CDs. This evidence supports an inference that Ballard possessed child pornography knowingly because it had to have been saved deliberately to these external devices. *See Krause*, 243 S.W.3d at 112; *Savage*, 2008 WL 726229, at *6.

Ballard contends that the child pornography could have been placed on his computer and other digital devices by another person. He suggests that Hall, his nephew who lived at the residence for several months, could have downloaded the material because he had access to the computer. Ballard also suggests that since his wireless network was not password protected, his neighbor or someone else could have shared files containing child pornography using his IP address. But as previously noted, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. *See Wise*, 364 S.W.3d at 903.

Although there was evidence indicating that Hall may have had access to Ballard's computer, there was also evidence indicating that he left the residence prior to the execution of the search warrant, that some of the child pornography was downloaded prior to the beginning of his stay there, and that he did not use Ballard's office computer except to search for jobs. Addi-

tionally, the fact that Ballard's wireless network was unsecured does not support an inference that the child pornography found at his residence was downloaded by someone else. There was no evidence that someone else could have used the unsecured wireless network to download child pornography and then save it to the external hard drives found at Ballard's residence, disconnected from any computer connected to the same network. Thus, the jury reasonably could have rejected the alternative hypotheses raised by Ballard to explain the child pornography found on his digital devices. *See Wise*, 364 S.W.3d at 906–08; *Wilson v. State*, 419 S.W.3d 582, 590–91 (Tex. App.—San Antonio 2013, no pet.).

Viewing the totality of the evidence and inferences in a light most favorable to the verdict, the jury reasonably could have inferred that Ballard knowingly had care, custody, control, or management of the child pornography found on the digital devices in his home. *See Wise*, 364 S.W.3d at 906–08; *Krause*, 243 S.W.3d at 111–12; *Zaretti*, 2006 WL 2506899, at *6; *Savage*, 2008 WL 726229, at *7. We overrule Ballard's challenge to the sufficiency of the evidence to support his conviction.

## II. Motion for mistrial based on violation of limine order

Ballard argues that the trial court erred by denying his motion for mistrial made after one of the State's witnesses testified about an extraneous offense, in violation of a limine order. The trial court instructed the jury to disregard the testimony and denied Ballard's motion for mistrial.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). The trial court's ruling must be upheld if it

was within the zone of reasonable disagreement. *Wead*, 129 S.W.3d at 129. A mistrial is required only in extreme circumstances when the prejudice is incurable. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Hawkins*, 135 S.W.3d at 77.

 Testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard unless it was so clearly calculated to inflame the minds of the jury or was "of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). Whether a witness's improper reference to an extraneous offense warrants a mistrial depends on the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

 The State called an FBI agent to testify about his participation in the search of Ballard's residence for child pornography. Previously, the jury heard testimony from a different FBI agent that a gun was found at Ballard's residence, but it was a starter's pistol, not a firearm. After the agent testified about how he performed a "forensic preview" of the computer, the following exchange occurred:

State: ... After you had finished with the computer, did you do any other searching of that residence?

Agent: If I did, it would have been just the search of that room where the computer was.

State: Looking for other digital devices, media?

Agent: Yes, sir.

State: Do you have any specific recollection about doing that in this case?

Agent: No. The only thing I recall, just because it was in the general area of the desk was the gun that was in the drawer. And I'm not sure that was a real gun or not, and then the drugs as well, the crystal meth.

Defense counsel asked to approach the bench. Outside the presence of the jury, counsel requested that the jury be instructed to disregard the agent's comments, and then he requested a mistrial. The prosecutor told the judge that it was "certainly not" his "intention to try to elicit that testimony." The court then instructed the jury to disregard the agent's statement and denied the request for mistrial.

The State questioned the agent about searching for digital devices in the home after he had finished his forensic preview of Ballard's computer. The State did not ask the agent whether he had found drugs in the home. Further, the court promptly instructed the jury to disregard the agent's statement. We conclude that the trial court, observing the exchange, could have concluded that the testimony was elicited unintentionally by the State and, given the totality of the circumstances, was not calculated to inflame the minds of the jury or of such damning character that it would be impossible to remove the harmful impression from the jury's mind. *See Kemp*, 846 S.W.2d at 308; *Williams v. State*, No. 01-11-00662-CR, 2013 WL 1804730, at *12–13 (Tex. App.—Houston [1st Dist.] Apr. 30, 2013, no pet.) (mem. op., not designated for publication); *Parker v. State*, No. 01-05-00586-CR, 2006 WL 2893370, at *5–7 (Tex. App.—Houston [1st. Dist.] Oct. 12, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that complainant's unintentionally elicited testimony about defendant's previous drug use was not calculated to inflame the minds of the jury); *Rogers v. State*, 200 S.W.3d 233, 237–39 (Tex. App.—Houston

[14th Dist.] 2006, pet. ref'd). Accordingly, the trial court did not abuse its discretion by denying Ballard's motion for mistrial. We overrule this issue.

### III. Legality of search

Ballard contends that the trial court erred by denying his motions to suppress evidence because the search warrant failed to satisfy the particularity requirement. Although probable cause existed to issue the warrant, he argues that the trial court also erred because probable cause ceased to exist during the execution of the search.

We review a ruling on a motion to suppress for an abuse of discretion. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We defer to a trial court's determination of historical facts, especially those based on an evaluation of a witness's credibility or demeanor. *Turrubiate*, 399 S.W.3d at 150; *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). We apply the same deference to review mixed questions of law and fact. *Turrubiate*, 399 S.W.3d at 150. When, as in this case, the trial court makes findings of fact and conclusions of law, we will uphold the trial court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.*

#### a. Particularity of the search warrant

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized.*" U.S. CONST. amend. IV (emphasis supplied). This requirement is also found in the Texas Constitution and the Code of Criminal Procedure. TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. art. 18.04(2).

The warrant in this case described the property to be searched by identifying its street address and referencing a more specific description in "Attachment A." The section of the warrant about the person or property to be seized stated: "Please See Attachment B." The supporting attachments specifically identified the place to be searched and the property to be seized. Ballard does not contend that the attachments failed to describe with particularity the place to be searched and the property to be seized. The warrant, including its supporting attachments, was admitted into evidence.

Ballard's challenge to the particularity of the warrant stems from the fact that he was not provided a copy of the warrant's attachments prior to the execution of the search. The officers did not have copies of the attachments with them at the time the search began. Upon completion of the search, Ballard was given a copy of the warrant with its attachments. He also was given an inventory of the property seized during the search. Because Ballard was not provided with copies of the attachments prior to the search of his residence, he contends that the warrant did not satisfy the particularity requirement, relying upon *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

Ballard argues that *Groh* stands for the proposition that a warrant which incorporates other documents by reference must be served with the incorporated documents at the time the search is executed in order to satisfy the particularity requirement. *Groh* held a search warrant invalid for lack of particularity. 540 U.S. at 557–58, 124 S.Ct. at 1289–90. In that case, an agent sought a search warrant to search for firearms. *Id.* at 554, 124 S.Ct. at 1288. The application for the search warrant particularly described the place to be searched and the items to be seized, but the warrant

itself failed to describe any of the items intended to be seized. *Id.* at 554, 124 S.Ct. at 1288. Unlike the warrant in this case, however, the warrant in *Groh* did not incorporate any other documents that particularly described the property to be seized. *Id.*

*Groh* noted that a purpose of the particularity requirement is to assure "the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.* at 561, 124 S.Ct. at 1292. The Court also noted that "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* at 557–58, 124 S.Ct. at 1289–90. But the Court did not address the issue of whether the documents incorporated by reference must be delivered prior to the beginning of the search to the person whose premises are being searched, because the warrant in that case did not incorporate any other documents by reference. *Id.*; *see United States v. Hurwitz*, 459 F.3d 463, 471 (4th Cir. 2006) ("*Groh* simply acknowledges the approach generally followed by the Courts of Appeals."). *Groh* did not establish a rule that a warrant may not be construed with reference to supporting documentation unless the supporting document accompanies the warrant at the time of the search. *See Groh*, 540 U.S. at 557–58, 124 S.Ct. at 1289–90; *Greene v. State*, 358 S.W.3d 752, 756–57 (Tex. App.—Fort Worth 2011, pet. ref'd); *Ramirez v. State*, 345 S.W.3d 631, 635 (Tex. App.—San Antonio 2011, no pet.). The precedent therefore does not compel Ballard's conclusion that the search was unreasonable because the officers did not provide him with copies of the attachments prior to executing the search.

Several Texas courts have analyzed situations similar to the one presented in this case. In *Greene v. State*, 358 S.W.3d 752 (Tex. App.—Fort Worth 2011, pet ref'd), and *Ramirez v. State*, 345 S.W.3d 631 (Tex. App.—San Antonio 2011, no pet.), law-enforcement officers executed search warrants and discovered evidence of criminal activity. The warrants in both cases did not provide particular descriptions of the places or persons to be searched or the items to be seized, but both warrants incorporated by reference the affidavits filed by the investigating officers in support of probable cause, which did provide particular descriptions. *Greene*, 358 S.W.3d at 754–55; *Ramirez*, 345 S.W.3d at 632. The criminal defendants in *Green* and *Ramirez* moved to suppress the evidence found during the execution of the search warrants. *Greene*, 358 S.W.3d at 754–55; *Ramirez*, 345 S.W.3d at 632. Both defendants argued that the warrants were not served with the incorporated affidavits and therefore were invalid under *Groh*. *Greene*, 358 S.W.3d at 756–57; *Ramirez*, 345 S.W.3d at 634. On appeal, both courts concluded that *Groh* did not stand for the proposition that a facially defective warrant, which incorporates another document by reference, is invalid if it is not served with the incorporated documents. *Greene*, 358 S.W.3d at 756–57; *Ramirez*, 345 S.W.3d at 634.

In *Greene* and *Ramirez*, both courts then concluded that Texas law does not require that an incorporated affidavit to be attached to the warrant at the time of the execution of the search. *Greene*, 358 S.W.3d at 758; *Ramirez*, 345 S.W.3d at 634. Both courts noted that Code of Criminal Procedure article 18.06(b), which incorporates article 1, section 9 of the Texas Constitution, requires only that the warrant and a written inventory of the items seized be served upon the owner of the premises to be searched. *Greene*, 358 S.W.3d at 758; *Ramirez*, 345 S.W.3d at

634. Significantly, both courts noted that numerous Texas courts have found that the failure to provide a copy of the warrant itself, an inventory, or both does not require a suppression of evidence absent a showing of prejudice. *Greene*, 358 S.W.3d at 758; *Ramirez*, 345 S.W.3d at 634 n.3.

▮▮▮▮ Similar to the courts in *Greene* and *Ramirez*, we conclude that the failure to serve a warrant, which incorporates other documents by reference, with the incorporated documents, does not require the suppression of evidence absent a showing of prejudice. *See Greene*, 358 S.W.3d at 758; *Ramirez*, 345 S.W.3d at 634 n.3. Ballard complains that because the warrant was served without the attachments, the officers who searched his residence did not know the limits of the warrant and conducted an unnecessarily broad search. Despite this contention, Ballard does not suggest that the officers' search revealed evidence that would not have been covered by the warrant. As a result, Ballard has not demonstrated any harm by the officers' failure to provide him with a copy of the attachments prior to the execution of the search warrant. *See Greene*, 358 S.W.3d at 758; *Ramirez*, 345 S.W.3d at 634 n.3. Additionally, the officers in this case provided Ballard with the warrant, the attachments, and an inventory upon completion of the search of his residence. We conclude that Ballard has not shown that he was harmed as a result of the officers' failure to provide him with a copy of the attachments incorporated into the warrant by reference prior to conducting the search of his home. *See Greene*, 358 S.W.3d at 758; *Ramirez*, 345 S.W.3d at 634. Therefore, the trial court did not abuse its discretion by denying Ballard's motion to suppress on this ground.

### b. Probable cause

Ballard also contends that the search was unreasonable because probable cause for the search ceased to exist after the officers entered his home. He argues that the officers lost probable cause once they discovered that the IP address at issue was tied to a wireless network. He suggests that based on this information, a law-enforcement officer with the experience of Officer Ackley should have realized that the offending device may not have been located at that physical location, and he should have questioned whether probable cause actually existed to issue the warrant.

▮▮▮▮ The State argues that Ballard inadequately briefed this issue. We agree. An appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An issue that is conclusory and provides no supporting authority presents nothing for appellate review. *See Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996). Ballard states that despite the issuance of a search warrant the officers lost probable cause to conduct the search once they entered his home. He does not offer any legal authorities to support this assertion. We conclude that Ballard inadequately briefed this issue, and it is therefore waived. *See* TEX. R. APP. P. 38.1(i).

### IV. Jury argument

In his final issue, Ballard contends that the trial court erred by overruling his objection to jury argument made by the State during the punishment phase. Specifically, he argues that the court allowed the State to make improper argument about parole law.

▮▮▮▮ We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). "[P]roper jury argument generally falls within one of four general ar-

eas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

■ The trial court was required by statute to instruct the jury, as it did in this case, that "if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed." *See* Tex. Code Crim. Proc. art. 37.07, § 4(b). In addition, the court must instruct the jury that it can "consider the existence of the parole law and good conduct time," but it cannot "consider the manner in which the parole law may be applied to this particular defendant." *See id.* In accord with these instructions, counsel may inform jurors about the law of parole in the abstract and ask them to take it into account in assessing punishment, but counsel cannot make arguments about the manner in which parole law will operate with respect to the defendant in particular. *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004).

■ During closing argument at the punishment phase of trial, Ballard objected to following argument:

State: What's the appropriate sentence for him? What's the appropriate sentence when under the applicable law in this case if the Defendant is sentenced to a term of imprisonment he will not become eligible for parole until the actual time served plus any good conduct time—

Defense: Your Honor—

State: —equals one-fourth of the sentence—

The Court: One moment, Mr. Driver.

Defense: We're going to object that that's an improper argument on considering parole law.

The Court: The objection is overruled.

State: You can read it for yourself. When the actual time served plus any good conduct time equals one-fourth of the sentence imposed.

In this situation, the prosecutor simply restated the parole-law instruction in the charge and urged the jury to take it into consideration. The prosecutor did not make any arguments regarding how parole law will operate with respect to Ballard. Thus, the prosecutor's statements in this case were not improper, and the trial court did not err by overruling Ballard's objection. *See Taylor*, 233 S.W.3d at 359; *Hawkins*, 135 S.W.3d at 84; *Waters v. State*, 330 S.W.3d 368, 370–75 (Tex. App.—Fort Worth 2010, pet. ref'd). We overrule this issue.

**Conclusion**

We affirm the judgment of the trial court.