**Affirmed and Majority and Concurring Opinions filed August 20, 2019.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-18-00201-CR

_____

### ROBERTO GUTIERREZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1497729**

## MAJORITY OPINION

A jury found appellant guilty of the continuous sexual abuse of a young child, and the trial court assessed punishment at forty years' imprisonment. *See* Tex. Penal Code § 21.02. In five issues, appellant contends that (1) the trial court erred by denying a motion to suppress the contents of his cell phone; (2) the trial court erred by admitting evidence from appellant's cell phone over appellant's Rule 403 objection; (3) the trial court erred by admitting evidence from appellant's cell phone under Article 38.37 of the Code of Criminal Procedure; (4) the trial

court erred by admitting evidence from appellant's cell phone because the State's witnesses were unable to testify that the contents amounted to evidence of extraneous offenses; and (5) the evidence is insufficient to support his conviction.

We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

We first address appellant's fifth issue concerning the sufficiency of the evidence. *See, e.g.*, *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Appellant contends that the evidence is insufficient because the State's evidence "consisted entirely of the complainant's testimony that the abuse occurred." Appellant focuses on (1) the lack of physical evidence of abuse; (2) the complainant's testimony conflicted with statements she had made to a Child Protective Services (CPS) investigator during an unrelated investigation several years earlier; (3) the failure of police to find vibrators in appellant's home, which the complainant described in an interview at the Children's Assessment Center ten days after appellant knew the abuse had been reported to the police; (4) the complainant allegedly gave different ending dates for the abuse when asked about it at trial, during the forensic interview, and during a medical exam; and (5) appellant's wife testified that appellant was impotent and therefore could not have abused the complainant in the manner described by the complainant.

## A. Standard of Review and Legal Principles

In a sufficiency review, we consider all of the evidence in the light most favorable to the jury's verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016). We defer to the jury's responsibility to

2

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 766. The jury is the sole judge of the credibility and weight to be attached to witness testimony, and we must defer to the jury's resolution of conflicting inferences that are supported by the record. *See id.*

## B.    Evidence

The complainant was fifteen years old at the time of trial in 2018. Before she reported the abuse, she had been living with her grandmother and appellant, who was the complainant's step-grandfather. The grandmother and appellant had adopted the complainant in 2008. The complainant testified about sexual abuse that occurred between the time she was in second grade and the summer before she entered seventh grade—at age twelve—when she told her grandmother and others about the abuse.

The complainant testified that appellant touched her privates[1] more than twenty times. She testified that appellant put his mouth on her private part a couple of times, and he would have her touch and tug his penis. Often, he tried to put his private inside her vagina. When he was unable to get his private part inside her vagina, he would "put it in [her] butt." He stuck his penis "up" her butt more than thirty times. She described feeling pressure, like she had to poop.

The complainant testified about how appellant would bribe her with candy bars or playtime with her brother, or by returning her bike that had been taken away. He would specify which sex acts to perform and for how many minutes to perform. He would show her pornographic videos and ask her to do what the girls in the videos were doing. The complainant testified that appellant took some close-

---

[1] When referring to testimony about anatomy, we use the terms used by the witnesses and the examining attorneys.

up pictures of her vagina a few days before the complainant told her grandmother about the abuse.

The jury saw State's Exhibit 15—a compact disc containing an "extraction report" and the contents of appellant's cell phone. A detective with the City of Katy Police Department testified that he believed appellant's phone contained child pornography. Among the images of child pornography, he described images that he believed to be close-ups of a child's vagina. The jury saw State's Exhibits 16 and 17, which are full-page printouts of images that the detective testified were found in the "camera roll" of the phone—not from the Internet search history. Viewing the images on Exhibit 15, a rational juror could conclude that two images depict the unclothed vulva of a child.[2]

State's Exhibit 15 also contains thousands of images of pornography and the "web history" from appellant's cell phone, showing the "topic," date, time, and link for websites that appellant visited. The detective testified about some websites that appellant visited, including those involving bestiality, rape, and incest. The investigator read aloud multiple topics involving sexual contact between daughters and fathers and stepfathers.

The complainant acknowledged on cross-examination that over a year before she disclosed the abuse, there was an "incident" with her brother that resulted in her talking to a CPS investigator. She acknowledged telling the investigator that no one had touched her private parts, she had not seen the private parts of any adult or child, no one had shown her inappropriate pictures, and she had not seen anyone

---

[2] As the State acknowledged at trial, the full-page printouts of some of the images from appellant's cell phone, admitted at trial as State's Exhibits 16 through 37, are "highly pixilated." The images on State's Exhibit 15 could be described as what are commonly understood as "thumbnail" images. We have reviewed the images on State's Exhibit 15, which provides a clearer view of the images compared to the full-page printouts.

touching anyone on their private parts. The complainant testified, "I was lying when I talked to the CPS person because I was scared I was going to lose my family and everything."

When the complainant reported appellant's conduct to her grandmother, they went to a police station to report the allegation on the same day in July 2015. Ten days later, the complainant was interviewed and examined at the Children's Assessment Center.

The forensic interviewer testified that at the time of the interview, the complainant had just finished the sixth grade and was going into the seventh grade. The interviewer testified about several specific instances of abuse that the complainant reported to the interviewer. The interviewer testified that the complainant reported that appellant placed his private in her vagina and anus. The complainant reported that appellant also licked her vagina, and he made her put her mouth on his private. The interviewer testified about the complainant's statements regarding appellant's use of two vibrators on the complainant's private parts. The complainant told the interviewer that appellant kept the vibrators in the pocket of a coat in a hall closet. When police officers searched the home after this disclosure, they did not find the vibrators.

A physician who examined the complainant testified that the complainant reported that the abuse started when the complainant was in the second grade, and the last time it occurred was a few weeks before the exam. During the exam, the physician asked the complainant where and with what appellant touched her. In addition to telling the physician about a vibrator, the complainant responded that appellant touched her "in [her] butt" with his "private part." The physician asked the complainant to clarify whether "in your butt" meant "in the crack of your butt

5

or inside the hole where the poop comes out." The complainant responded, "In the hole."

The complainant's grandmother and appellant's son testified that they did not believe the complainant's allegations. The grandmother testified that appellant was impotent and unable to achieve an erection. The last time she and appellant had sexual intercourse was in November 2009. She testified on cross-examination that appellant did not have access to juvenile females other than the complainant. The grandmother reviewed State's Exhibit 17. She was angry and sad that pictures of a juvenile female's genitalia were found on appellant's phone "[b]ecause it's— it's someone else. . . . It's not his wife."

## C.    Analysis

In this case, the State had to prove that (1) appellant was seventeen years of age or older; (2) the complainant was younger than fourteen years of age; and (3) during a period of time of thirty or more days, appellant committed at least two acts of "sexual abuse"—here, aggravated sexual assault of a child as pleaded in the indictment—against the complainant. *See* Tex. Penal Code § 21.02(b), (c)(4). To prove aggravated sexual assault of a child, as an element of the offense of continuous sexual abuse of a young child, the State could meet its burden by proving, among other possible statutory bases, that appellant caused the complainant's anus to contact appellant's sexual organ. *See id.* § 22.021(a)(1)(B)(iv), (2)(B).[3]

---

[3] Although we recite only one statutory basis when reviewing the sufficiency of the evidence, we note that the State adduced evidence of other statutory bases for aggravated sexual assault. *See* Tex. Penal Code § 22.021(a)(1)(B)(i)–(v). We recite only one statutory basis without considering any issues of jury unanimity. *See* Tex. Penal Code § 21.02(d) (jurors are "not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant").

The complainant's testimony, standing alone, is sufficient to support appellant's conviction for continuous sexual abuse of a young child. *See Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.); *see also, e.g., Torres v. State*, 424 S.W.3d 245, 253 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (aggravated sexual assault of a child). Neither physical nor medical evidence was required to corroborate the child complainant's testimony, which is otherwise sufficient to support a conviction. *See Bargas v. State*, 252 S.W.3d 876, 888–89 (Tex. App.—Houston [14th Dist.] 2008, no pet.). And, it was solely the jury's duty to judge the complainant's credibility and to resolve any conflicts in the evidence. *See Balderas*, 517 S.W.3d at 765–66. Thus, the jury could have found the complainant credible despite her earlier statements to a CPS investigator, the failure of police to find instrumentalities of the crime in appellant's home ten days after the crime was reported, and the grandmother's claim that appellant was impotent.[4]

Moreover, the complainant's testimony that appellant took pictures of her vagina was corroborated by the detective's discovery of two images in the camera roll of appellant's phone, which depicted an unclothed vulva. The grandmother testified that the pictures were not of her, and appellant did not have access to any young girls other than the complainant. Based on the physical appearance of the vulva depicted in the images and the testimony of the witnesses, a rational jury could have inferred that the images were of the complainant's vulva. *See id.* (jury

---

[4] Furthermore, we disagree with appellant's characterization of the evidence that the complainant gave different ending dates for the abuse. Her testimony that the abuse ended during the summer before her seventh grade was consistent with her statement to the physician that the abuse ended a few weeks prior to the July 2015 exam. The forensic interviewer testified that she and the complainant "didn't specifically speak about a last time" the abuse occurred, but "the last time we did talk about it she was in the fifth grade." The interviewer clarified regarding the incident that occurred in fifth grade: "She did not describe it as the last incident but just that was the last incident that we talked about."

may draw reasonable inferences); *see also Wilson v. State*, 419 S.W.3d 582, 593 (Tex. App.—San Antonio 2013, no pet.) (sufficient evidence that images depicted children based on court's review of the evidence and testimony from a detective that the images depicted children); *cf. Porath v. State*, 148 S.W.3d 402, 417 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (trial court, when determining admissibility, may review images without the benefit of expert testimony to determine whether the State met its burden to show that the images depicted real children).

Considering all of the evidence in the light most favorable to the jury's verdict, including reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. Thus, the evidence is sufficient to affirm appellant's conviction for continuous sexual abuse of a young child.

## II.   MOTION TO SUPPRESS

In his first issue, appellant contends that the trial court erred by denying his motion to suppress all evidence related to the warrantless seizure of his cell phone. He contends that (1) the seizure was not consensual, and (2) the police officer lacked exigent circumstances and probable cause. We hold that the trial court did not err by denying the motion because the totality of the circumstances show the existence of exigent circumstances and probable cause.

## A.   Standard of Review and Legal Principles

When reviewing a trial court's ruling on a motion to suppress, we give almost complete deference to the trial court's determination of historical facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214

S.W.3d 17, 24 (Tex. Crim. App. 2007). But, we review de novo mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor, such as whether an officer had probable cause to effect a seizure. *See Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997). We will sustain a trial court's ruling on a motion to suppress if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190.

The Fourth Amendment prohibits unreasonable searches and seizures. *Id.* Generally, the seizure of personal property is per se unreasonable within the meaning of the Fourth Amendment unless the seizure is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized. *United States v. Place*, 462 U.S. 696, 701 (1983); *see also Pine v. State*, 921 S.W.2d 866, 872 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd w.o.j.) ("A warrantless seizure is presumptively unreasonable."). But there are exceptions to the warrant requirement. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013). One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search or seizure is objectively reasonable under the Fourth Amendment. *See id.* at 148–49. "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Place*, 462 U.S. at 701.

Once a defendant establishes that a search or seizure was conducted without a warrant, as here, the burden shifts to the State to prove that the search or seizure was reasonable. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

The State can meet this burden by showing the existence of exigent circumstances and that the officer had probable cause for the seizure. *See Crayton v. State*, 485 S.W.3d 488, 501 (Tex. App.—Texarkana 2016, no pet.) ("If either probable cause or exigent circumstances are not established, a warrantless search or seizure will not pass muster under the Fourth Amendment." (citing *Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006) (regarding warrantless entry into home)); *see also Place*, 462 U.S. at 701.

Exigent circumstances are met if the risk of the item's disappearance before a warrant may be obtained outweighs the suspect's interest in possession. *See Place*, 462 U.S. at 701–02; *see also McNeely*, 569 U.S. at 149 (noting that officers may conduct a search without a warrant to prevent the imminent destruction of evidence; and a warrantless search is reasonable under these circumstances because there is a compelling need for official action and no time to secure a warrant). For example, an exigency could be shown if a suspect has control over easily disposable evidence. *See McNeely*, 569 U.S. at 153 (citing *Georgia v. Randolph*, 547 U.S. 103, 116 n.6 (2006)). To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, we look to the totality of the circumstances. *Id.* at 149.

In addition to proving exigent circumstances, the State must also prove that the officer had probable cause to associate the property with criminal activity. *See Texas v. Brown*, 460 U.S. 730, 741–42 (1983). Probable cause is not a high bar. *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Probable cause is established if the facts available to the officer would warrant a person of reasonable caution in the belief that certain items may be useful as evidence of a crime. *See Brown*, 460 U.S. at 742. "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept

that is not readily, or even usefully, reduced to a neat set of legal rules." *Wesby*, 138 S. Ct. at 586 (quotations and citations omitted). A practical, nontechnical probability that incriminating evidence is involved is all that is required. *Brown*, 460 U.S. at 742. The State does not need to show that the officer's belief was correct or more likely true than false. *Id.* Probable cause requires only a "probability or substantial chance" of criminal activity. *Wesby*, 138 S. Ct. at 586 (quotation omitted).

## B. The Evidence

Although appellant's cell phone was ultimately searched pursuant to a warrant, the State stipulated that the seizure of the phone was warrantless. At the suppression hearing, a detective with the City of Katy Police Department testified that he thought it was important to seize appellant's cell phone because the grandmother reported that the complainant had stated to the grandmother that appellant had taken photographs of the complainant's private parts using a cell phone. The grandmother described the phone to the police as "Robert's phone," although she did not identify it by make, model, or color. The detective believed he had probable cause to seize appellant's cell phone to preserve evidence, so the images on appellant's phone could not be deleted or altered in any way. In the detective's experience, it would be easy to delete images on a cell phone.

At the police station, the detective told appellant that his phone "would be part of the investigation." When the detective asked appellant for appellant's phone, appellant asked if he could get important numbers out of the phone. The detective allowed appellant to do so, but the detective walked around a table "to make sure that's all that was happening." The detective observed appellant "in the gallery section of his phone." Appellant "switched back to the contacts" section of the phone and then gave the phone to the detective. The detective acknowledged

11

that at the time he took the phone from appellant, the detective did not know that the phone was the one the grandmother had been talking about.

Appellant testified that the detective said, "I need to have that phone." Appellant thought he had to give the detective the phone, so he did. Appellant testified that the detective was lying about appellant being in the gallery section of the phone.

## C.     Analysis

Appellant does not contest the detective's testimony that images on a cell phone can be easily deleted. And, viewing the evidence in the light most favorable to the trial court's ruling, the court could have found that appellant was manipulating the contents of the gallery section of his phone. Under these circumstances, the State showed exigent circumstances for seizing the phone because appellant had control over easily disposable evidence. *See McNeely*, 569 U.S. at 153; *see also Orosco v. State*, No. 03-15-00383-CR, 2017 WL 2873352, at *6 (Tex. App.—Austin June 29, 2017, pet. ref'd) (mem. op., not designated for publication) (noting the existence of exigent circumstances because the defendant was aware that police had been told there was a recording of a sexual assault on his phone, and the delay needed to obtain a search warrant could have resulted in destruction of the evidence if the phone was returned to the defendant); *cf. Riley v. California*, 573 U.S. 373, 388 (2014) (although officers may not search a cell phone incident to arrest, it is a "sensible concession" that officers may seize and secure a cell phone so "there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone").

Attacking the existence of probable cause, appellant focuses on the lack of a description of the phone provided to the detective other than "Robert's phone." Appellant cites no authority to suggest that a police officer must know the make,

model, or other description of a phone before seizing it. Nor does appellant cite any case to suggest that the officer must know for *certain* that the object seized was the one containing evidence of a crime.

In this case, the detective learned that "Robert's phone" potentially had images of child pornography and would substantiate the child complainant's allegation of continuous sexual abuse. We hold that a person of reasonable caution could believe that there is a substantial chance that the phone appellant carried on his person was the "Robert's phone" described by the grandmother. *See Orosco*, 2017 WL 2873352, at *6 (probable cause when officer had been told there was recording of sexual assault on phone); *Cruse v. State*, No. 01-13-00077-CR, 2014 WL 3607250, at *3 (Tex. App.—Houston [1st Dist.] July 22, 2014, pet. ref'd) (mem. op., not designated for publication) (probable cause when officer had been advised that the defendant "taped himself having sex" with the child complainant and the complainant told the officer that "mobile phones had been used to record her assault").

Viewing the totality of the evidence in the light most favorable to the trial court's ruling, the State has shown the existence of exigent circumstances and probable cause. Accordingly, the seizure of appellant's cell phone was reasonable under the Fourth Amendment.[5]

Appellant's first issue is overruled.

---

[5] Appellant has not challenged—at trial or on appeal—the duration of the seizure, so we do not consider it in the analysis. *See Orosco*, 2017 WL 2873352, at *4 (distinguishing between a challenge to the initial seizure and the appellant's argument that the retention of the cell phone for several days was unreasonable).

## III.   ADMISSION OF EVIDENCE

In his second through fourth issues, appellant contends that the trial court erred by admitting evidence of "pornographic photographs" and "Internet search histories" found on appellant's phone. In particular, the trial court admitted the extraction report and contents of appellant's phone as State's Exhibit 15, a CD containing images of bestiality pornography and purported child pornography. Also, the court admitted State's Exhibits 16 through 37, which are printouts of some of the images found on appellant's phone.

On appeal, appellant contends that the trial court erred for three reasons. *First*, appellant contends that the evidence should have been excluded under Rule 403 of the Texas Rules of Evidence (issue two). *Second*, appellant contends that the requirements of Article 38.37 of the Code of Criminal Procedure were not met because the State failed to show beyond a reasonable doubt that the photographs depicted children, and bestiality pornography was not admissible because appellant did not engage in public lewdness under Section 21.07 of the Penal Code (issue three). *Third*, appellant contends that none of the evidence was admissible under Article 38.37 because the State did not show that (1) the photographs and search histories "constituted evidence of extraneous offenses or prior bad acts" against the complainant; or (2) appellant committed a separate offense beyond a reasonable doubt (issue four). Appellant does not make specific arguments concerning each of the State's exhibits, but rather challenges the totality of the admitted evidence.

We review initially the requirements of Article 38.37 because the trial court held a hearing outside the presence of the jury to determine admissibility under that statute. Then, we recite the procedural background. Next, we recite what error has been preserved or not preserved and what error we will assume without deciding has been preserved.

We hold that the trial court did not err by admitting, under Article 38.37, two images of child pornography contained on State's Exhibit 15 through 17. Furthermore, any error from the admission of pornography in State's Exhibit 16 through 37 over appellant's Rule 403 objection was harmless. Finally, any error from admitting, under Article 38.37, the bestiality pornography contained on State's Exhibit 15 was harmless.

## A.     Procedure Under Article 38.37

Section 1 of Article 38.37 provides that in a prosecution for a sexual offense against a child, as here, "Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrong, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." Tex. Code Crim. Proc. art. 38.37, § 1. Section 2 of the statute makes admissible evidence that the defendant has committed a separate offense listed in the statute against any person "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* art. 38.37, § 2(b). A defendant's possession of child pornography is one of the listed offenses that may be admissible under Section 2. *See id.* art. 38.37, § 2(a)(1)(H). The list of offenses does not include public lewdness or any other offense that might include the possession of bestiality pornography involving adults. *See id.* art. 38.37, § 2(a)(1).

Before evidence of an offense listed in Section 2 may be introduced, the trial court must conduct a hearing outside the presence of the jury to determine whether the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable

15

doubt. *Id.* art. 38.37, § 2-a. Furthermore, the State must give the defendant notice of the State's intent to introduce evidence under Article 38.37 before trial. *Id.* art. 38.37, § 3.

## B.     Procedural Background

The trial court held several hearings outside the jury's presence regarding the admission of evidence. After denying appellant's motion to suppress, the court announced it was "dealing with another preliminary matter based upon Texas Rules of Evidence 104, and that preliminary matter concerns Article 38.37 of the Code of Criminal Procedure dealing with extraneous offenses or acts." Appellant initially objected because he claimed not to have received notice under Article 38.37. The State produced a document that purported to be adequate notice under the statute, and the trial court asked appellant if he requested notice. When appellant responded that he did not know if he requested notice, the trial court told the parties to proceed with the hearing.

A detective testified that he found child pornography on appellant's cell phone. Specifically, he testified that he found two images of a prepubescent girl's genitalia. The detective testified that he did not know how old the girl was or when the pictures were taken. The detective also found images of bestiality pornography on the phone, and the "search history [of the phone] was consistent with child porn and bestiality."

At the conclusion of the hearing, appellant made three arguments for why the State had not met its burden to show admissibility of three categories of evidence—the child pornography, bestiality pornography, and Internet search histories. *First*, appellant argued that the testimony and evidence did not show that the three categories of evidence were present on appellant's phone during the dates

16

specified in the State's notice.[6] **Second**, appellant argued that "at the time this phone was seized, possession of pornography depicting bestiality was not illegal in the State of Texas." **Third**, regarding the two images of a prepubescent girl, appellant argued that the detective could not say how old the girl was, so "we do not know whether that image is an image of child pornography or not." The trial court ruled that the requirements of Article 38.37 had been met and that the evidence would be admissible in the State's case-in-chief.

During the detective's testimony in front of the jury, the State offered into evidence State's Exhibit 15—a compact disc containing the extraction report and contents of appellant's cell phone. Appellant initially objected because, although he had reviewed the extraction report, he had never seen the extraction report on the disc. When the State said the disc was the "same thing," appellant withdrew his objection. The trial court admitted State's Exhibit 15 into evidence. When the State attempted to publish part of the exhibit to the jury, appellant objected that "the probative value, if any, of these images is far outweighed by the prejudicial effect." The trial court responded, "You're not timely with your objection. It's already been admitted into evidence."

Later, the State offered into evidence State's Exhibits 16 through 37, which a detective identified as images that had been taken directly from the extraction report contained on State's Exhibit 15. Appellant made the same objection that the probative value was outweighed by prejudicial effect. The trial court clarified that these exhibits were "just a printout of what has already been admitted, which is State's Exhibit No. 15 from the CD." The trial court overruled the objection.

---

[6] The State had alleged in its notice that appellant possessed child pornography and bestiality pornography "on or about August 1, 2010 and continuing through October 8, 2014."

## C.  Preservation of Error

To determine our scope of review, we must evaluate whether any alleged error has not been preserved. *See, e.g.*, *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016) (appellate court must address any issues of error preservation before reversing a conviction regardless of whether preservation is raised by the parties).

### 1.  Preservation Principles

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint. *See* Tex. R. App. P. 33.1; *see also* Tex. R. Evid. 103(a)(1) (party may claim error for a ruling admitting evidence if the party timely objects or moves to strike and states the specific ground). A complaint on appeal must comport with the specific complaint that the appellant timely lodged in the trial court. *Penton v. State*, 489 S.W.3d 578, 580 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd); *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). The appellant must have conveyed to the trial court the particular complaint raised on appeal, including the precise and proper application of law as well as the underlying rationale. *Penton*, 489 S.W.3d at 580.

For an objection to evidence to have been made timely, the appellant must have objected to the evidence, if possible, before it was actually admitted. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). If it was not possible to object before admission, the appellant must have moved to strike the evidence from the body of evidence the jury was allowed to consider as soon as the objectionable nature of the evidence became apparent. *See id.* To preserve error

18

regarding the admission of evidence, a party must object each time the inadmissible evidence is offered, obtain a running objection, or request a hearing outside the presence of the jury. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *see also* Tex. R. Evid. 103(b).

Furthermore, if a trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed on appeal. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). If on appeal the appellant does not challenge a theory of law applicable to the case that supports the trial court's ruling, a court of appeals will uphold the trial court's ruling without considering the merits of the unchallenged basis for the ruling. *See Mixon v. State*, 523 S.W.3d 765, 767–68 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *see also Copeland v. State*, 501 S.W.3d 610, 614 (Tex. Crim. App. 2016) (holding that the State procedurally defaulted an argument because although the argument was a theory of law applicable to the case, the State failed to advance that argument on appeal). A theory of law is applicable to the case if it was litigated in the trial court. *See Copeland*, 501 S.W.3d at 613; *see also Mixon*, 523 S.W.3d at 769 (procedural default when the defendant failed to challenge on appeal a basis for the trial court's ruling that the trial court expressly stated).

### 2.    *Analysis*

The only argument regarding the Internet search histories that appellant made at the Article 38.37 hearing was based on the dates listed in the State's notice of extraneous offenses. Appellant does not make this same complaint on appeal regarding the Internet search histories. Thus, any error related to admission of the Internet search histories under Article 38.37 is not preserved. *See, e.g., Pena*, 285 S.W.3d at 464; *Penton*, 489 S.W.3d at 580.

We assume without deciding, however, that the latter two arguments appellant made at the Article 38.37 hearing are preserved and subsumed by appellant's issues on appeal. *See* Tex. R. App. P. 38.1(f). Specifically, we will address appellant's contentions that (1) the two images of purported child pornography were not admissible under Article 38.37 because the State failed to prove that the images were of a child, and (2) evidence of bestiality pornography was not admissible under Article 38.37.

On appeal, appellant does not address the trial court's express reasoning for overruling appellant's Rule 403 objection to State's Exhibit 15—that appellant's objection was untimely because the exhibit had already been admitted into evidence. Thus, appellant has procedurally defaulted any Rule 403 complaint to State's Exhibit 15. *See Mixon*, 523 S.W.3d at 767–69; *see also Copeland*, 501 S.W.3d at 614. Furthermore, the Rule 403 objection was untimely and did not preserve error, and appellant did not move to strike the exhibit. *See Ethington*, 819 S.W.2d at 858.

We assume without deciding, however, that appellant's Rule 403 objection to State's Exhibits 16 through 37 was preserved and has not been procedurally defaulted by appellant's failure on appeal to address the trial court's concern that the images portrayed in State's Exhibits 16 through 37 had already been admitted as part of State's Exhibit 15.

**D.    No Error to Admit Images of Child Pornography Under Article 38.37**

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion if the ruling lies outside the zone of reasonable disagreement. *Id.*

20

Under Article 38.37, evidence is admissible to show that a defendant possessed child pornography if the trial court determines that the evidence likely to be admitted will be adequate to support the jury's finding beyond a reasonable doubt that the defendant possessed child pornography. *See* Tex. Code Crim. Proc. art. 38.37, §§ 2(a)(1)(H), 2(b), 2-a(1). The trial court had before it, as does this court, two images that a detective described as child pornography. Although the detective could not testify as to the exact age of the girl depicted in the two images, he testified at the Article 38.37 hearing that the images were of a child. This court has reviewed the images contained on State's Exhibit 15, and we hold that the trial court did not abuse its discretion by implicitly finding that a jury could find beyond a reasonable doubt that appellant possessed child pornography. *Cf. Wilson*, 419 S.W.3d at 593 (sufficient evidence that images depicted children based on court's review of the evidence and testimony from a detective that the images depicted children); *Porath*, 148 S.W.3d at 417 (trial court, when determining admissibility, may review images without the benefit of expert testimony to determine whether the State met its burden to show that the images depicted real children).

The trial court did not abuse its discretion by admitting evidence of child pornography under Article 38.37.

**E. No Harm from Admission of State's Exhibits 16 Through 37 and Evidence of Bestiality Pornography**

We assume without deciding that the trial court erred by admitting (1) the printouts of images in State's Exhibits 16 through 37 in light of appellant's Rule 403 objection, and (2) evidence of bestiality pornography under Article 38.37. But the errors, if any, were harmless.

### 1.    *Legal Principles*

The erroneous admission of evidence is non-constitutional error that requires reversal, i.e., is harmful, only if the error affects the appellant's substantial rights. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Error affects substantial rights only if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* If we have a fair assurance from examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction. *Id.* In making this determination, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the error. *Id.* We consider everything in the record and may consider the jury instructions, the parties' theories of the case, and closing arguments. *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).

Generally, error is harmless if very similar evidence is admitted without objection. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010); *see also Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." (quotation omitted)).

### 2.  *State's Exhibits 16 Through 37*

State's Exhibits 16 through 37 are, as the State suggested at trial, "highly pixilated" printouts of images found on appellant's cell phone, which were also contained on the CD admitted as State's Exhibit 15. Any error in the admission of State's Exhibits 16 through 37 over appellant's Rule 403 objection is harmless because the trial court admitted State's Exhibit 15 without appellant making a

timely Rule 403 objection. *See Estrada*, 313 S.W.3d at 302 n.29; *Leday*, 983 S.W.2d at 717.

### 3. *Bestiality Pornography*

Through the erroneous admission of bestiality pornography contained on State's Exhibit 15, the jury could have seen that appellant possessed thousands of images depicting adult men and women engaged in sexual activity with a variety of animals, including but not limited to dogs, horses, pigs, snakes, insects, and at least one crustacean.[7] As defense counsel articulated during closing arguments, while discussing the pornography found on appellant's phone, "I'm not going to lie to you, it was disgusting."

The State, however, did not specifically refer to bestiality pornography during its closing argument. The State referred to pornography generally while arguing appellant was not impotent. Rather than mention the bestiality pornography, the State emphasized the two images of the complainant's genitalia and appellant's Internet searches for pornography involving fathers and daughters.

The evidence supporting the jury's determination of guilt included compelling testimony from the complainant, along with testimony from a forensic interviewer and a physician who relayed the complainant's statements. The complainant's testimony regarding abuse was graphic in detail. And, her testimony was corroborated by appellant's possession of two images in the "camera roll" of his phone depicting the unclothed vulva of a child, which the jury could have inferred was the complainant. *Cf. Young v. State*, 242 S.W.3d 192, 202 (Tex. App.—Tyler 2007, no pet.) (no harm from admission of pictures of irrelevant

---

[7] Appellant does not ask this court to consider the harmful nature of any particular image on State's Exhibit 15, and we have not reviewed the entirety of State's Exhibit 15. We have, however, reviewed an adequate sample to determine the nature of the evidence.

"sexual items"—*PlayBoy* magazines, lubricant, condoms, and penis pump—in prosecution for possession of child pornography because: the complainant gave compelling, though contradicted, testimony; there was additional circumstantial evidence; and the State did not emphasize the error).

In light of the other evidence presented at trial, the discussion of bestiality pornography was brief, and the State did not publish to the jury the thousands of images of bestiality pornography contained on State's Exhibit 15. Although the detective testified that some of the images in Exhibits 16 through 37 were child pornography, the detective did not testify that any image was bestiality pornography.[8]

Furthermore, the jury charge included three different instructions concerning extraneous offenses—one for offenses against the child complainant (Section 1 of Article 38.37), one for offenses against any child (Section 2 of Article 38.37), and one for other offenses (Rule 404(b)(2) of the Texas Rules of Evidence). The Section 1 instruction allowed the jury to consider evidence of appellant's "other crimes, wrongs, or acts against the child who is the victim of the alleged offense." The Section 2 instruction allowed the jury to consider evidence of "offenses against a child under seventeen years of age, other than the complainant," for any bearing on relevant matters, including appellant's character and acts performed in conformity with his character. The Rule 404(b)(2) instruction limited the jury's consideration of evidence of appellant's committing offenses other than the one alleged in the indictment: "you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

---

[8] Upon reviewing Exhibits 16 through 37, we note that one image appears to show a dog, but it does not appear that the dog is engaged in a sexual act.

mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose."

The jury instructions are particularly informative on the harm analysis in this case because the type of error that we are evaluating does not involve the erroneous admission of pornography under a timely Rule 403 objection. We do not opine on the potential harm from such an error.[9]

In this case, the assumed error is the admission of the evidence under Sections 2 and 2-a of Article 38.37. The purpose of the Article 38.37 hearing was to determine the admissibility of the bestiality pornography for "any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2(b). The jury instructions make clear, however, that the jury could **not** consider the bestiality pornography while passing upon appellant's character. Thus, even if the trial court erroneously concluded that the bestiality pornography was admissible for proving appellant's character and actions in conformity therewith, the jury instructions prevented the jury from using the evidence for purposes of character conformity. We presume that the jury followed these instructions. *See, e.g.*, *Thrift v. State*, 176 S.W.3d 221, 222, 224 (Tex. Crim. App. 2005) (affirming conviction for sexual assault of a child despite potentially erroneous admission of evidence that the defendant possessed pictures of "nude males" because the jury was instructed to consider the exhibits for "no other

---

[9] *See generally Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (trial court erred by overruling Rule 403 objection to nearly 10,000 images of pornography, some of which involved children, in prosecution for sexual assault and sexual assault of children); *Pawlak v. State*, No. 13-10-00535-CR, 2014 WL 1370032, at *3 (Tex. App.—Corpus Christi Apr. 3, 2014, pet. ref'd) (mem. op., not designated for publication) (on remand, holding that the Rule 403 error was harmful despite overwhelming evidence of guilt because the magnitude of the thousands of images of pornography likely disrupted the jurors' orderly evaluation of the evidence). As noted in Part III.C.2 of this opinion, appellant did not preserve error regarding Rule 403

purpose" than determining the defendant's intent to arouse or gratify his sexual desire as alleged in a count of indecency with a child).

In sum, the State did not emphasize the bestiality pornography, the testimony about it was brief, it was not published to the jury, the nature of the other evidence of guilt was significant, and the jury instructions limited the jury's consideration of the evidence to the permissible Rule 404(b)(2) uses, if any. From our examination of the record, we are assured that the error did not influence the jury or had but a slight effect. The error, if any, was harmless.

Appellant's second, third, and fourth issues are overruled.

## IV. CONCLUSION

Each of appellant's issues is overruled. The trial court's judgment is affirmed.

/s/ Ken Wise
   Justice

Panel consists of Justices Wise, Zimmerer, and Spain. (Spain, J., concurring).
Publish — Tex. R. App. P. 47.2(b).